Pratt *v.* Thornton.

## Phineas Pratt *versus* James B. Thornton.

28 355
100 394

Where a conveyance of land is made by absolute deed, and the grantee gives back to the grantor a written contract, promising to sell the land at a certain time, and to pay two notes with the proceeds, and to pay the balance to the grantor; such grantee holds the land in trust, and it is his duty to make sale thereof at the time specified, and appropriate the proceeds in the manner stated in the contract.

And if a third person be a surety on one of the notes, although he might not have known of the trust, when it was undertaken, yet when he was informed of it, and could enforce its execution, the original parties to it cannot annul it.

If there should be a mortgage upon the estate, the trustee may pay it off, and the amount paid will be a charge upon the estate.

The trustee cannot in equity, become the purchaser of the trust estate; and the *cestui que trust* may avoid any purchase of the trust estate made by the trustee.

When a party has materially improved the estate, under a belief honestly entertained, with reasonable grounds for that belief, that he is the owner of the land, and the aid of a court of equity is sought by the true owner to enforce his title, it will be granted only on the condition, that such innocent person shall be compensated to the extent of the benefit which he has conferred upon the owner. But this cannot be done to the prejudice of the owner.

This was a bill in equity, and was heard on bill, answer and proof.

The facts are sufficiently stated in the opinion of the Court.

The following is a copy of the agreement given by Thornton to Tucker : — "Saco, November 9, 1837.

"Know all men by these presents, that I, J. B. Thornton,

have this day received of Jonathan Tucker, Jr., a deed of the land, house and out-buildings, situate on Maine street, in Saco, bounded by land of Moses Emery and Widow Sarah Thornton, and is the same that formerly belonged to Waldo Hill, Jr., of Saco, as collateral security for payment of his note for seventeen hundred and twenty-five dollars, payable in two years, with interest quarterly; and also to indemnify me for any amount.that I may have to pay on a note indorsed by me, and signed by said Tucker and Phineas Pratt, to Israel Small, of Limington, dated in January, 1836. If said Tucker pays the above named notes at maturity, or within two years from this time, I hereby agree to relinquish to him all the right received this day to the above named property; otherwise I am to raise the amount from the property, and pay the balance to said Tucker, if any remains."

*Evans* argued for the plaintiff, contending : —

The court has jurisdiction of the case, sitting as a court of equity.   They have jurisdiction in all matters of trust. 2 Story's Eq. § 1050 ; 3 Sumn. 475 ; 4 Pick. 1 ; 3 Ves. 127; 2 Johns. C. R. 88.   This was a conveyance in trust, to sell the property, and return the balance, unless the grantor paid the debt.

The defendant is bound in the relation of trustee, and Tucker could not have discharged him from his obligation, had he undertaken it.   The answer says, that Tucker abandoned the property to him.   He could not make a valid conveyance to Thornton.   The trustee can take no valid conveyance of the trust estate.   2 Story's Eq. 972, 980 ; 3 Johns. C. R. 261 ; 4 Pick. 71 ; 8 Pick. 405 ; 20 Maine R. 431; 15 Maine R. 388 ; 1 Ves. 477 ; 8 Wheat. 421 ; 15 Pick. 23 ; 4 Metc. 375. He was bound to sell the property, as agreed at the time of the conveyance.

Thornton might and could have sold subject to the mortgage to Mrs. Hill.   Thornton can acquire no rights against the plaintiff by the purchase in of that mortgage.   2 Story's Eq. § 1211 ; 3 Sumn. 487 ; 1 Peters, 145.

Thornton has no right to claim any allowance on account

of any thing done by him, which he calls improvements. He should have done his duty, and sold the estate, and has no right to change or alter the property. He cannot set up his own misconduct as a ground of claim in a court of equity. 17 Mass. R. 474; 18 Maine R. 366; 2 Metc. 561; 8 Pick. 122.

The Perkins judgment on the Small note was procured by fraud; and the Court should enjoin him not to proceed to execute it.

He contended that the law was in his favor, and that on the whole merits of the case, the plaintiff was entitled to relief.

*W. P. Fessenden,* for the defendant, argued mainly on the facts; contending as matter of law for these positions : —

The obligation to sell the property ceased, when the situation of it had materially changed. 1 Russ. & M. 236; 1 Sim. & St. 229.

The plaintiff did not rely upon the trust, but took an assignment from Tucker to himself. He has a complete remedy at law. The plaintiff, too, may pay the notes, and bring his suit at law against Thornton, and have a complete remedy, if he has any merits. 10 Ves. 420; 3 Metc. 541.

Thornton was not a surety on the note, but a guarantor, and as such might take up the note, without destroying its validity. 10 Pick. 121; 8 Pick. 423; 1 Metc. 387.

The property, if the estate is to be sold, which we trust will not be ordered, should be appropriated first to pay the mortgage, then the improvements, then the note to Thornton, and then the Small note. 3 Metc. 541; 24 Pick. 257; 20 Maine R. 427; 22 Maine R. 295.

The opinion of the Court was drawn up by

TENNEY J.— On Nov. 9, 1837, the defendant having that day taken a note from Jonathan Tucker, Jr. for the sum of $1725, payable in two years, with interest quarterly; and his name being upon a note to Israel Small, signed by Tucker as principal, and the plaintiff as surety, dated Jan. 20, 1836, payable in two instalments, one on the 1st of May, and the

other the 1st November next following its date, on which was supposed to be due about $1500, took from Tucker a conveyance of certain real estate in Saco, consisting of land and buildings thereon ; and gave at the same time a written contract, in which he acknowledged, that he had received the deed as collateral security, for the payment of the note of $1725, and also to indemnify him for any amount which he might have to pay on a note *indorsed* by him and signed by said Tucker and Phineas Pratt; and then is added, "If said Tucker pays the above named notes at maturity, or within two years from this time, I hereby agree to relinquish to him all the right received this day to the above property ; otherwise I am to raise the amount from the property, and pay the balance to said Tucker, if any remains." At the time of this transaction, the estate was encumbered by a mortgage to Miranda Hill, which was not mentioned in the deed or the agreement of the defendant, but its existence was known to him.

The bill charges, that the parties thereto were co-sureties on the note to Small. This the defendant denies in his answer, saying that he refused to become such with the plaintiff, but put the following upon the back of the note. "I hereby guaranty the payment of the within note. J. B. Thornton." There is no evidence in direct conflict with this denial ; the written agreement refers to a note *indorsed* by the defendant ; but when that was written the note was not present, and it is evident that the language was descriptive of the note in general terms, and not intended for a distinction between the defendant as indorser and guarantor. Tucker does not testify with certainty, that the indorsement was not filled, when the defendant first put his name thereon, before the note passed to Small ; but Small thinks the guaranty was filled, when he received the note. On Dec. 9, 1837, the agent of Small called upon the defendant, and he renewed his guaranty for a consideration paid in behalf of Small, to pay within one year, and the previous guaranty was thereupon erased. Soon after this, Tucker became insolvent, and as the defendant states in his answer, informed him, "that he must take the real estate aforesaid, and

get what he could from it, for he could do no more for him;" and the testimony of Tucker upon this point, is of the same import. In March, 1841, the defendant paid the amount due upon the mortgage to Mrs. Hill, she having previously entered to foreclose ; and after that entry the defendant went into possession, under a lease from her, at a rent of $70 a year, and about the same time, underlet it at a yearly rent of $150, from Dec. 1838, to Sept. 1839, and afterwards has occupied it himself to the present time, has made extensive additions to the buildings, and improved the lands, and claims to hold the same by an absolute title, notwithstanding he has done nothing in fulfilment of his written agreement, made at the time of the conveyance. In October, 1838, by money and accommodation paper furnished by the defendant, the note to Small was taken up, and the payee indorsed his name in blank, " not accountable ;" and by the procurement of the defendant an action was commenced in the name of Edmund Perkins, against the plaintiff, entered at the April Term, 1839, of the Supreme Judicial Court in the county of York, and came to judgment in 1840, no defence being made ; execution was issued, but has never been enforced. On Oct. 17, 1844, Tucker assigned his interest in the contract of the defendant, to the plaintiff, for indemnity against his liability.

No unwillingness on the part of the plaintiff, to be the sole surety on the note to Small, at the time he signed it, is shown. When the note was first written a blank was left for the insertion of the name of another person as surety, and that blank was afterwards filled with the name of the defendant, but at what time does not appear ; but there is nothing showing that the plaintiff placed his name upon the note under any agreement, that there was to be another surety. As the note was when received by Small, the defendant was not a co-surety with the plaintiff, and was not liable to make contribution to him, if he should have paid the note after its maturity. *Oxford Bank* v. *Haynes*, 8 Pick. 423 ; *Largley* v. *Griggs*, 10 Pick. 121.

Under the legal rights and liabilities arising from the relations

of the makers and guarantor of the note alone, the defendant was liable to the holder of the note, but was entitled to indemnity from the principal and surety, in an action upon the note after its transfer. And a judgment in the name of one, whom he had authorized to bring the action, was valid.

The subsequent guaranty made by the defendant was a contract in which the makers of the note had no connection, and it could not be to their prejudice. The note was taken up under the subsequent agreement between the holder and the defendant, and the action against the plaintiff was by the indorsee against him as the maker.

The plaintiff seeks relief of the Court sitting as a court of equity, by a decree, that the defendant be required to a specific performance of his written agreement, and from the proceeds of said property to discharge the judgment against him and to account for the rents and profits of said estate from the time the same came to his possession; and also that he be perpetually enjoined from enforcing or reviving the judgment in the name of Perkins.

A trust is an equitable right, title or interest, in property real or personal, distinct from the legal ownership thereof. Story's Eq. § 964. A declaration of trust, is required to be in writing; but it is not necessary that it should have any particular form or solemnity in writing, nor that the writing should be under seal. *Ibid.* 972. In this case the conveyance was in its terms absolute, but the agreement executed at the same time makes a part of the same transaction, and clearly declares an express trust. By it a fund was required to be raised, which the defendant was bound to apply according to the terms of the contract and the spirit of the trust. Tucker, who provided the means for raising the fund, was entitled to two years in which to pay the debts to the defendant and Small and take a re-conveyance. In less than one year afterwards finding himself unable to perform the condition, he informed the defendant, " that he must take the real estate aforesaid, and get what he could from it, for he could do no more for him." The defendant in his answer gives this direction of Tucker as the

authority for the course, which he afterwards pursued, and he relies upon it as an abandonment by Tucker of all interest in the property. Tucker in his testimony denies any such abandonment, and states the conversation between him and the defendant, which is wholly irreconcilable with such an idea. But independent of the testimony of Tucker, the abandonment cannot be inferred from the statements in the answer itself. After reciting the direction given by Tucker, the defendant says, — "The said Tucker did accordingly abandon that property to the defendant;" without stating more specifically in what that abandonment consisted. The note to the defendant remained as it was, no agreement was made in reference to that or to the note of Small; the parties were silent on the subject of the value of estate conveyed, or what sum should be allowed therefor. No consideration moved from one party to the other; the agreement creating the trust obligations of the defendant remained in force, not canceled or agreed to be annulled; no contract was then made, which in any degree lessened the defendant's liabilities, or modified essentially his duties; the very language used by Tucker, clearly imported an expectation, that the fund first in contemplation, should be raised from the estate. Tucker waived the right to redeem within the time first secured to him. Instead of an exposure of the defendant, to pay the debt to Small and wait for that and his own claim, two years from the time of his assumption of the trust, before he could proceed to raise the amount from the property, he was then at liberty to proceed immediately in the discharge of the duty, which he had undertaken. Tucker believed that sufficient might be raised from the estate to discharge the debts due to the defendant and Small, and perhaps leave a balance to himself, and he was entitled to a faithful fulfilment of the defendant's agreement. If the value of the property conveyed was sufficient for this purpose, the contract was beneficial to the plaintiff as surety on the note to Small; he was not a party to the agreement, and it was not entered into with his knowledge; yet after he knew of its existence, it was in his power to affirm it, and enforce its execu-

tion, unless it had been previously annulled by the parties to it. *Cumberland* v. *Codrington,* 3 Johns. Ch. 229 ; *Shepherd* v. *McEvers,* 4 *ibid.* 136 ; Story's Eq. 972. Nothing having been done to relieve the defendant from a strict performance of his agreement, he was bound to execute the trust ; the express contract, and the interest of the plaintiff required this. The omission on his part although of long continuance, has not released him from his original obligation, or deprived the *cestui que trust* of any of the benefits, to which he was ever entitled. The trust was direct and express ; and so long as it subsists, the right of the *cestui que trust* cannot be barred by the length of time during which he has been out of possession. *Cholmondely* v. *Clinton,* 2 Jac. & Walk. R. 1. *DeCouche* v. *Savetier,* 2 Johns. Ch. 216. In the case of *Baker & ux.* v. *Whiting & al.* 3 Sumner, 475, the Court say, " in the case of a trust of lands, nothing short of the statute period which would bar a legal estate, or right of entry, would be permitted to operate as a bar of the equitable estate." *Prevost* v. *Gratz,* 6 Wheaton, 481.

The rights of the *cestui que trust* in the original agreement may with propriety pass to the plaintiff, as his surety, by assignment, as an indemnity against his liability. By the payment of the debt to the defendant, and the amount of the note to Small, he would, without the assignment, be entitled to the collateral security, provided by his principal for the reimbursement of the money so paid, in the same manner, that the latter would, under the contract with the defendant, be entitled to the surplus, after deducting the amount of those debts. Story's Eq. 1050, 1057 ; *Bigelow* v. *Wilson,* 1 Pick. 493 ; Story's Eq. 499, a, b, c.

It is insisted that the mortgage to Mrs. Hill, which was not excepted in the deed of conveyance, materially modified the rights of one party and the duties of the other. The defendant accepted the trust under a full knowledge of that incumbrance ; and he expressed no wish to surrender it, when he was informed by Tucker, that he could do no more for him. He might have expected before the insolvency of Tucker, that

the latter would cause a discharge of the mortgage ; but the defendant took the deed, and by virtue of its authority removed the incumbrance, and now claims the estate without the execution of the trust under an alleged abandonment of the *cestui que trust*. He is undoubtedly at liberty first to deduct from the avails of the property, the amount paid in the discharge of the mortgage ; that was a charge upon the estate, which he could in the exercise of his discretion as trustee, remove ; then proceed in the sale of an indefeasible estate, instead of an equity of redemption.

But as he accepted the trust, he cannot now contend, that any of his acts touching the estate were for his own benefit; all that he did in reference to the property, the law treats as done for the *cestui que trust*. The taking of the lease of the estate of the mortgagee in possession, the leasing of the same to another at an advanced rent, the payment of the sum necessary to redeem the estate from the mortgage, notwithstanding they may have been intended by the defendant for his own benefit, the law regards as performed in his character of trustee. Story's Eq. 1211 and 1261.

As long as the relation of *cestui que trust* and trustee exists, the latter cannot become the purchaser of the trust property ; to him is confided the duty of selling ; the interest of a purchaser is in conflict with the duty which he thus assumes. The law holds the two characters as absolutely incompatible, so that the exercise of the two in the same individual is prohibited. When a trustee has undertaken to become the purchaser, the fairness of the transaction, and the payment of the full value, proved to the entire satisfaction of a court of equity, gives them no power to affirm the sale. It is a fundamental principle in the law relating to trusts, that the *cestui que trust* can treat as a nullity, a sale to the trustee. *Warmly* v. *Warmley*, 8 Wheaton, 421. It follows *a fortiori*, that the trustee can acquire in no other manner an absolute title in himself. And nothing could be regarded as more absurd, than the proposition, that he could derive a title by his own wrongful omission to perform the obligations, which he had voluntarily

assumed. The payment of the debt to the mortgagee, his continued occupation of the estate, the additions to the buildings, the improvements to the lands, and his claim to hold the whole, cannot in any wise change the equitable title in the estate.

Again it is insisted, that Tucker could not claim to have the trust executed upon the estate, improved as it is contended that it has been, without first allowing all the expenditures thereon ; that he stood by, saw the defendant enter upon the estate as his own, called for no sale or reconveyance ; and when he made an assignment after large amounts had been thus expended, he could invest his assignee with no right, which he did not himself possess. It is true, that the plaintiff's rights under the assignment are not superior to those of the assignor ; and when a party has materially improved the estate under a belief honestly entertained, with reasonable grounds for that belief, that he is really the owner of the land, and the aid of a court of equity is sought to enforce a title against him, it will be granted only on the condition that such innocent person shall be compensated to the extent of the benefit, which he has conferred upon the owner. Story's Equity, § 799, (a.) Courts of equity require this, because the party who saw that the occupant that made the outlays and improvements, was misled, and took no means to inform him of his own claim ; and if he should refuse to allow this compensation, he is considered guilty of a fraud, and shall not be permitted to reap the benefit arising from his own wrong. But if his acts and silence do not mislead or in any way influence the other party, there can be no just inference of actual or constructive fraud on his part, — Story's Equity, § 386, — and the trustee cannot deduct the amount of the sums expended in additions and improvements, to the prejudice of the cestui que trust ; it is an established principle that the trustee cannot diminish the trust fund by causing expenditures more than sufficient for necessary repairs upon the trust property, when it consists in real estate. But if it shall be made to appear that upon a sale of the property, the amount receiv-

ed is greater than it would have been, had no improvements been made, the trustee, who has been guilty of no fraudulent design in making the improvements, may be allowed to retain the excess. Judge Story remarks, "the object of this whole doctrine is to compensate the *cestui que trust*, and to place him in the same situation as if the trustee had performed faithfully his own proper duty." Story's Equity, § 1278; *Green* v. *Winter*, 1 Johns. Ch. 26. In this case the Chancellor says, "It must be and always has been the anxious wish of a court of chancery, to save a trustee from harm, while he is acting in good faith; but a misapplication of the trust property by going out of the trust can never be permitted, to injure the *cestui que trust*, without his assent." It is the business of a court of equity to afford full protection to the *cestui que trust*, but not to punish the trustee for his ignorance or carelessness merely, further than is required for such protection.

The contract, by virtue of which, the defendant became trustee, defined with precision his duties, under the law; the other party was guilty of no fraudulent concealment; nothing was known to the latter, of which the former was ignorant. The relations to each other and to the estate, all arose from the deed, and the contract to which they were the only parties. The defendant knew he had the legal title, for the purpose of obtaining the value of the property according to the agreement. The improvements were made afterwards by him without authority, when he ought to have known that he could acquire no title to the estate, till he had fully executed the trust. Such expenditure was not contemplated by the parties to the contract. But there is no proof that the improvements were made fraudulently, with any intention to prevent a sale, to cause an injury to the other party, to obtain a title to the land, or advantage to himself; but from an unauthorized belief, that the estate had become his own, when the improvements were made.

The defendant's counsel endeavor to maintain that the Court have not jurisdiction of the suit, as a court of equity; that the plaintiff by the payment of a note, which he is bound to make, can resort to his action at law for the injury received

by any breach of the agreement on the part of the defendant. This Court have power to hear and determine, as a court of equity, when the parties have not a plain and adequate remedy at law, all suits to compel specific performance of contracts in writing, and all cases of trusts. By the declaration of trust in the transaction connected with the conveyance to the defendant, the grantor, and also the plaintiff by affirming the trust, were authorized to enforce it; the rights of both are now united in the latter, and he can require that the value of the property be raised and appropriated in discharge of the claims, to which, by a proper constuction of defendant's agreement, he was bound to apply it. He can hold from the fund a sum sufficient to reimburse him for the advances to remove the incumbrance, and also the amount of his own note in payment thereof, together with the sum paid by him upon the note in favor of Small. If the estate shall fail to produce a sum equal to all these charges, he or the person who obtained the judgment against the defendant may receive thereon from the plaintiff any sum left unpaid. The parties to the deed adopted their own mode to raise the sums necessary for these objects, and it is not in the power of one of them alone to refuse to do all that he was bound to perform to carry the design into full execution. The defendant could not, as we have seen, under the agreement acquire an absolute title to the estate; in a design to accomplish such a purpose, the Court could not aid him, however honest may have been his intentions and however much for the benefit of the other party it may be supposed to be. When the court cannot exercise such a power under any circumstances, affirmatively and directly, can they negatively and indirectly in a case of trust promote such prohibited object? Can they deny to themselves jurisdiction as a court of equity on the ground, that there is a plain and adequate remedy at law, when the inevitable result of success in a resort to that remedy will be to give to the defendant, the very thing, which they are restrained by unyielding principles from granting? The defendant bound himself in writing to perform specific acts in the execution of a trust.

The execution may not be for the plaintiff's benefit, but the aid of the Court in cases like the present, cannot with propriety be denied.

The plaintiff is entitled to a decree, that a master be appointed under whose direction the defendant is required to execute the contract by making sale of the estate, the rents and profits of which the master is to take an account. If the estate has fallen in value by reason of the neglect of the defendant to make sale thereof within a resonable time after two years from Nov. 9, 1837, when the contract was made, he is to be charged with the loss, thereby occasioned. If proof be made to the master, that the amount of sales has been increased by reason of the additions and improvements made by the defendant, he may be allowed to retain for his own use such excess, but no farther. The defendant is to be charged with such rents and profits, as the estate would have produced had no additions and improvements been made. From the amount of sales and rents, he should be allowed to apply sufficient to pay off the mortgage and interest thereon to the time, when he is charged with the rents; 2d to the payment of the sum due on the note of $1725 to himself up to the same time; and 3d, the balance is to be applied in extinguishment of the judgment in favor of Perkins against the plaintiff. And the decree is to be made accordingly.

Case reserved for further proceedings upon the coming in of the master's report.