[No. 6,450.—Department One.]

## THOMAS E. JANES ET AL. v. S. R. THROCKMORTON.

TRUST—EQUITABLE CONVERSION OF PROPERTY—PROBATE SALE—ESTATES OF DECEASED PERSONS—PARTIES—REAL PROPERTY—DEFINITION.—R. conveyed land to the defendant, who, at the same time, covenanted in writing that he would sell enough of the land to pay off the incumbrances thereon, and account with S. and M.—children of R.—for one-fifth of the moneys remaining on hand from sales of the land, after paying the incumbrances; and also that he would sell all the lands within three years, or at his option convey to S. and M. one-fifth of all the lands remaining on hand after paying the said debts and expenses. Afterwards, a mortgage upon a portion of the land having been foreclosed, and the land sold and conveyed by the sheriff, the defendant, under the circumstances stated in the opinion, obtained a conveyance from the purchaser. The interests and rights of S. and M. under the covenant having afterwards become vested, by proper mesne conveyances, in J., were after his death sold by his administrator, under an order of the Probate Court, as personal property. *Held*, in an action by the heirs of J.: (1) That the defendant took the land in trust for S. and M. to the extent of the rights reserved to them in the covenant; and to that extent they had an equitable interest in the land; that the deed and covenant did not work an equitable conversion of the land into personal property; and that the sale of this interest by the administrator as personal property was therefore void; (2) that the title obtained by the defendant from the purchaser at the foreclosure sale inured to the benefit of his *cestuis que trust* to the extent of their rights under the covenant; (3) that the action was properly brought by the heirs of J.; and (4) that, in view of the fact that the record failed to show any notice on the *cestuis que trustent* of an adverse holding by the trustee, the defense of the Statute of Limitations could not be maintained.

ID.—EQUITABLE CONVERSION OF PROPERTY.—To constitute a conversion of real estate into personal, in the absence of an actual sale, it must be made the duty of, and obligatory upon, the trustees to sell it in any event. Such conversion rests upon the principle that equity considers that as done which ought to have been done.

ID.—ADMINISTRATOR—ESTATES OF DECEASED PERSONS—PARTIES.—An administrator has no power to bring a suit to enforce a trust and to compel a conveyance of land to himself.

ID.—STATUTE OF LIMITATIONS.—As between trustee and *cestui que trust*, in the case of an express trust, the Statute of Limitations does not begin to run until the trustee repudiates the trust by clear and unequivocal acts or words, and claims thenceforth to hold the estate as his own, not subject to any trust, and such repudiation and claim are brought to the knowledge of the *cestui que trust*.

APPEAL from a judgment for defendant, and order denying a new trial, in the Nineteenth District Court, City and County of San Francisco. WHEELER, J.

After the decision, the respondent filed his petition that the appeal be reheard in Bank, and the application was denied.

*Douthitt & McGraw,* for Appellants.

By the terms of the covenant, Throckmorton became a trustee. (*Hearst* v. *Puhol,* 44 Cal. 230; *Watts* v. *Ball,* 1 P. Wms. 108.) The deed from Stone did not inure to defendant or terminate his trust. Had it carried a good title, it would have gone to the benefit of the trust; but it was and must be here taken to have been an invalid title, for Throckmorton had so stated under oath, and an order for judgment to that effect had been made, at the instance of Throckmorton and plaintiffs' predecessors. It was only after procuring the title from S. that the defendant caused the order to be set aside and the action dismissed. He procured the money with which he acquired the Stone title, by mortgaging the identical property. It was by virtue of his trust only that he was in a position to mortgage or sell any of the property.

Where the acts of a trustee admit of two constructions, in respect to his *cestuis que trust,* one that he acted fairly, and the other that he acted unfairly, equity will choose the former, and will presume that he acted in the line of his trust. (*McGinn* v. *Shaffer,* 7 Watts, 412; *Brantley* v. *McKee,* 5 Jones' Eq. 333; *Jewett* v. *Miller,* 18 N. Y. 402.)

In Maine, an absolute conveyance of land was made, and the grantee gave back an obligation agreeing to sell the land within a certain time, pay certain debts out of the proceeds, and pay the balance to grantor. The grantee acquired title under previous incumbrances, and attempted to hold it adversely. The Supreme Court of Maine denied him that privilege, and held that the title acquired by him inured to the benefit of the *cestui que trust.* (*Pratt* v. *Thornton,* 28 Me. 355.)

No actual fraud need be alleged on the part of the trustee. The object of the rule which precludes trustees from dealing for

their own benefit in matters to which the trust relates, is to prevent secret frauds by removing all inducements to attempt them. (*Fulton* v. *Whitney*, 66 N. Y. 555; *Slade* v. *Van Vechten*, 11 Paige, 21; *Van Epps* v. *Van Epps*, 9 id. 237; *Bank of Orleans* v. *Torrey*, 7 Hill, 260; *Hawley* v. *Cramer*, 4 Cowen, 717; Hill on Trustees, No. 536 *h*.)

*William Irvine*, and *Delos Lake*, for Respondent.

The interest of Janes at the time of his death was an interest in a personal covenant, and his administrator having sold the interest as personal property, there is no interest in the plaintiffs. It is a fair test of the quality of this interest whether or not, if, (say) on the day prior to Janes's death, a judgment creditor of his could have sold it as real property on execution, and conveyed it to a purchaser. If it was an interest in the land, it clearly could have been so sold and conveyed. We submit that it was not liable to judgment lien and execution sale as real property as to the beneficiaries, and this proposition we think is too obvious or plain to discuss or to require discussion. (*Gallager* v. *Pine*, 51 Cal. 94.)

As to the point that the defendant was acting as trustee in acquiring the Stone deed, we say, first, that Throckmorton in that transaction intended to acquire the property for himself, and from time continuously claimed to be the owner; second, that Stone's title was then perfect; third, that he raised the money, not solely by a mortgage on the land, but his promissory notes secured by mortgage.

It is a perfect answer to this case that the purchase by Throckmorton from Stone is not alleged or counted upon as constituting a breach of his trust obligation, nor is it alleged that he ever made such a purchase, nor is it alleged or shown that the land was ever sold to pay the debts of Richardson by the lien creditors, that Stone ever became the purchaser of it; or, indeed, that there was any change of the property, except as it was affected by the sales alleged to have been made by Throckmorton, after the date of the Richardson deed. In short, the only breach that is alleged in the complaint is the refusal of Throckmorton to divide the proceeds of sales and convey one-

fifth of the land.  The action is barred by the Statute of Limitations.

*William Irvine,* and *Delos Lake* (on petition for rehearing).

Although it is discretionary to grant a rehearing, it was undoubtedly intended by the Constitution that *important* cases should be thus reheard; and the importance may consist either in the amount involved, or in the legal questions presented, or in both.  That this case is important in both aspects is not disputed.

The contract upon which this suit was brought was signed by the defendant more than a quarter of a century ago.  He had reason to suppose that after the lapse of so long a period he had reached that repose, in the enjoyment of his property, which the enlightened policy of the law endeavors to guarantee to the citizens and taxpayers of the State.

But now, late in life, he is called into Court to surrender 3,333 acres of land, lying at the very door of this city, and to account for $400,000 received some twelve or fifteen years ago.

The magnitude of the case itself is sufficient, on a bare suggestion, to warrant the Court in granting our prayer.  If this be not the kind of case the Constitution intended, what kind did it intend?

In the covenant of Throckmorton, the words "at my option" have such an import as to negative the creation of any trust in the unsold land.

If the defendant meant to say, that I will, at my option, either sell the land or convey the one-fifth part, *when* and *how* was that option to be exercised?  The Court has already determined, in speaking of the three years in which the land was to be sold, that time was not of the essence of the contract.  The complaint in this case does not allege that a reasonable time had elapsed, or that the defendant had elected which he would do, or that he had refused to elect; and consequently plaintiffs are asking the enforcement of a trust which, viewed most favorably for themselves, rests in the alternative merely.  Upon a case thus presented the Court can made no decree, because it is not alleged which act he agreed to do; and so it follows that the complaint does not state facts sufficient to constitute a cause of action.

The trust, if there was one, is in the alternative; and until an election has been made, or a refusal to elect, no action lies, unless it be one to compel an election, or for damages.

Ross, J.:

This action is brought to enforce an alleged trust. Defendant had judgment in the Court below, and the plaintiffs appeal from the judgment, and from an order denying them a new trial. The case is one of considerable interest, not only because of the questions, but also by reason of the amount involved. The questions, however, in our opinion, are not difficult of solution. So far as material to be considered, the facts are as follows: On the 9th of February, 1856, one William A. Richardson conveyed by deed to the defendant Throckmorton the Saucelito rancho situated in Marin County, the Albion rancho situated in Mendocino County, and certain real property situated in San Diego County. Maria A. Richardson, wife of William A. Richardson, Stephen Richardson, his son, Mariana Torres, his daughter, and Manuel Torres, her husband, joined in the deed, though they had no interest in the property. At the time of the execution of the deed to defendant, a covenant was executed, signed by all of the parties to the deed, in which the defendant, in consideration of the conveyance to him, covenanted as follows: "That I, the said Throckmorton, shall sell and dispose of so much of the above-mentioned real estate (namely, the estate conveyed by the deed) as I may deem necessary to liquidate, pay off, or discharge all the debts and incumbrances which constitute liens on said property, or any part thereof, at the time of the execution of the deed last above mentioned. And after all such debts or incumbrances shall be discharged or extinguished, together with all such debts and incumbrances as may be a present or future lien upon said premises, that I, the said Throckmorton, will account and pay over to said Stephen Richardson and Mariana Torres the one-fifth part of all moneys remaining on hand, if any there be, arising from such sales of real estate after the discharge of such indebtedness and expenses accruing in the transaction of said business. And that I, the said Throckmorton, shall sell all of the said lands above described within three years of the date

hereof, or will, at my option, convey the undivided one-fifth part of all lands remaining unsold after the discharge of said debts and expenses to said Stephen Richardson and Mariana Torres. And that I, the said Throckmorton, shall reserve from sale, and after the liquidation and discharge of said debts and liens will convey, free from all incumbrances created by me, the said Throckmorton, to the said Stephen Richardson, for the use of the said Maria A. Richardson, wife of the said William A. Richardson, the homestead upon which the said Richardson now resides, containing about one square mile of land, bounded as follows: * * * And it is understood and agreed by and between the parties to these presents that the liability of the said Throckmorton, the party of the first part, for the payment and discharge of said debts, mortgages, liens, or judgments on said lands, shall be limited to the amount of the proceeds which he may receive from the sale or disposition of said land as aforesaid."

At the time of the conveyance to the defendant, to wit, February 9th, 1856, William A. Richardson was largely indebted, and there were then existing liens on the property conveyed. Among other liens, there was a mortgage upon the Saucelito rancho, executed by the said William A. Richardson to one Joseph Black, and by him assigned to one J. Mora Moss, which mortgage had at that date been ripened into a decree of foreclosure. There was also then existing another mortgage upon the Saucelito ranch, executed by the said William A. Richardson to one Barton Ricketson, which mortgage was about to be foreclosed. Shortly afterwards, to wit, on the 18th of February, 1856, an action was commenced in the Seventh District Court to foreclose the last-mentioned mortgage, in which action the said William A. Richardson, Stephen Richardson, Maria A. Richardson, Mariana Torres, Manuel Torres, and others were made defendants, as were also the defendant Throckmorton and the said J. Mora Moss, assignee of the Black mortgage. The complaint in that action prayed judgment of foreclosure and sale of the mortgaged premises to satisfy both of the mortgages mentioned. All of the defendants were personally served with the summons in the action. Afterwards, and in the month of April, 1856, said William A. Richardson died testate in the

county of Marin, and the said Manuel Torres was duly appointed executor of his estate by the Probate Court of said county.

To prevent forced sales of the property, and to afford defendant Throckmorton the time and opportunity to find purchasers and make sales of the property to pay and discharge the indebtedness of said William A. Richardson, he, defendant, exerted all the means in his power to hinder and prevent the prosecution of said foreclosure suit to judgment ; and in the mean time he made strenuous efforts to make sales of the lands in order to discharge the debts of the said William A. Richardson, and to free the property of the incumbrances ; but he was then unable to consummate any sale.    On the 6th of March, 1862, judgment was entered in the District Court in the foreclosure suit of *Ricketson* v. *Richardson et als.*    An appeal having been taken to the Supreme Court, the judgment of the District Court was directed to be modified ; and accordingly, on the 31st of October, 1862, a final decree of foreclosure and sale was entered in the action, by which it was directed that the lands of the Saucelito rancho (except the homestead) should be sold, and that out of the proceeds of the sale the J. Mora Moss mortgage be first paid, and that next the Ricketson mortgage should be paid. Under this mortgage, the sheriff of Marin County, on the 5th day of June, 1863, sold all the land of the Saucelito rancho (except the homestead of Richardson and the town of Saucelito) for the sum of $84,000, that being the amount of the judgment, including the expenses of sale.    Edward F. Stone became the purchaser at the sale, and received the sheriff's certificate.

After the certificate had been issued to Stone, but before the sheriff had executed to him a deed, to wit, on the 18th of September, 1863, the defendant Throckmorton, Maria A. Richardson, Stephen Richardson, Manuel Torres, Mariana Torres, and Manuel Torres as executor of the estate of William A. Richardson, deceased, and others, commenced an action in the Seventh District Court against Edward F. Stone et als., for the purpose of vacating and annulling the said sale to Stone, the complaint in which action was verified by the defendant Throckmorton, and alleged as one of the grounds entitling the plaintiffs to the relief sought ; that he, Throckmorton, together with Torres, as

executor of the estate of William A. Richardson, deceased, had instructed the sheriff to sell the property under the decree of foreclosure and sale in subdivisions, which instructions the sheriff had refused to observe; and that in giving the instructions, he, Throckmorton, and Torres, as executor, "were *acting in the interest and on behalf of themselves and the other complainants.*" Stone answered in the cause; but between the date of the filing of the complaint and of the filing of Stone's answer, that is to say, on the 7th of December, 1863, the sheriff executed to Stone a deed for the property sold to him at the foreclosure sale. The case having been transferred from the Seventh to the Fifteenth District Court, it came on afterwards for trial, and on the 12th of December, 1864, there was entered in the minute book of said Fifteenth District Court the following: "*Throckmorton et als.* v. *Stone et als.* This action having been heretofore tried and submitted on the proofs of the respective parties, and due deliberation having been had thereon, and it appearing to the Court now here that the sale made by the said defendant Valentine Doub, late sheriff of the county of Marin, of the property described in the complaint herein, was and is fraudulent and void, and that the purchaser thereat took nothing by his bid or purchase, and that the deed of said property, executed and delivered by the said defendant Valentine Doub, as sheriff, to said defendant Edward F. Stone, was and is hereby declared to be null and void, and nothing has been conveyed thereby, and the same is set aside and canceled. And it is further adjudged and decreed that the costs of said sale, to wit, the sum of $1,811.78, paid to the defendant Valentine Doub, late sheriff as aforesaid, are not and be not a lien upon said property. And it is further ordered that the plaintiffs herein recover their costs and disbursements of and from the defendants Edward F. Stone and Valentine Doub, late sheriff, and that they do not recover costs or disbursements of or from the other defendants; that the parties to this action have twenty days from the entry of this order to move this Court in reference to a sale of said property under the decree heretofore made therefor; and let a finding and decree be drawn in conformity with the facts and the opinion of this Court hereafter to be filed herein, and the same to be submitted to the judge for settlement."

After the making of this order, negotiations were entered into between the defendant Throckmorton and Stone looking to a compromise, and a settlement was effected. In speaking of it, Stone testified: "The settlement with Mr. Throckmorton was a compromise. It was in the early part of 1865. I remember a suit brought by Throckmorton to set aside the sheriff's sale to me under the Ricketson mortgage. Judge Dwinelle decided that the ranch should be sold in subdivisions instead of being sold as a whole, as it was sold by the sheriff. I do not remember the exact time the decision was rendered, but it could not have been a great while before the compromise. The compromise was effected after the decision of Judge Dwinelle. The terms of the compromise were, that I should turn over to Mr. Throckmorton all interest that I had in connection with the Saucelito rancho, or against either—something connected with the Albion rancho, I believe. The consideration was $45,000. That included the Black mortgage, too, for which I paid $10,000 in gold—$15,000 in greenbacks, worth $10,000 in gold at that time. It also included all title I acquired in a sale on a judgment rendered in one of the District Courts in San Francisco in favor of Robert S. Watson against Mr. Throckmorton. At the time of the sale it amounted to somewhere in the neighborhood of $7,000 or $8,000. Under the Watson judgment, the entire interest of Mr. Throckmorton in the Saucelito ranch was sold, and I became the purchaser, and got the sheriff's deed. That was all included in the compromise."

Pursuant to this compromise, Stone, on the 25th of February, 1865, executed to the defendant Throckmorton a deed for the property mentioned in the sheriff's deed, made to him under the foreclosure sale; and on the 7th of March, 1865, there was entered in the minute book of the said Fifteenth District Court, in the aforesaid cause of *Throckmorton et al.* v. *Stone et al.*, the following: "And now, on this day come the parties plaintiffs and defendants, by their respective attorneys of record, and by their stipulation entered into in open Court, consented to vacate the order setting aside the sale mentioned in the complaint, and directing a finding to that effect, entered herein on the 12th day of December, A. D. 1864, and to a dismissal of this suit. It is therefore ordered, adjudged, and decreed, that the said order

be vacated, and every part thereof be vacated and set aside, and that this suit be and the same is hereby dismissed."

The $45,000 paid by Throckmorton to Stone in effecting the compromise was obtained by Throckmorton by executing his promissory note therefor, and securing its payment by mortgaging the Saucelito rancho; and the $45,000 so paid Stone was a settlement not only of the Ricketson and Black mortgages, but also of the Watson judgment against Throckmorton individually. At or about the time of the settlement with Stone, the defendant Throckmorton executed other mortgages upon the Saucelito rancho, upon which he obtained the additional sum of $30,000, with which he discharged the other indebtedness of said William A. Richardson.

On the 4th of August, 1868, the defendant Throckmorton, pursuant to the covenant of February 9th, 1856, conveyed the homestead of William A. Richardson to Stephen Richardson for the use of Maria Antonia Richardson.

On the 28th of March, 1857, Stephen Richardson, Manuel Torres, and Mariana Torres conveyed all their interests in, and rights under, the covenant of February 9th, 1856, to one William A. Darling, who subsequently, on the 9th of December, 1861, conveyed all of his interest therein to Horace P. Janes. On the 6th of October, 1862, Janes died intestate in the city and county of San Francisco, leaving surviving him as his heirs at law and next of kin the plaintiffs in this action. On the 8th of October, 1862, Charles B. Polhemus was duly appointed administrator of the estate of said Horace P. Janes, deceased, in and by the Probate Court of said city and county. On the 10th of January, 1863, Polhemus filed in said Court an inventory of the property of said estate, after the same had been appraised, in which inventory there was set down as *personal* estate the interest of said Horace P. Janes, deceased, in the aforesaid covenant of February 9th, 1856, said interest being appraised at fifty dollars. On the 2nd of February, 1863, upon petition made, the Probate Court directed the administrator to sell all of the personal property of said estate at public auction. Under this order the administrator, on the 18th of May, 1864, made a sale at public auction of all the right, title, and interest of the estate of said Horace P. Janes, deceased, in and to the said cov-

enant of February 9th, 1856, to the said Edward F. Stone for the sum of $120, which amount Stone paid the administrator. The sale having been reported to the Probate Court, that Court, on the 30th day of May, 1864, made an order approving the said sale, and thereupon and on the same day the administrator executed to Stone a bill of sale of Janes's rights under the covenant. On the 25th of February, 1865, and at the same time of the execution of the deed hereinbefore mentioned, Stone conveyed to defendant Throckmorton whatever interest in the covenant, if any, he obtained under the administrator's sale.

The Court below found, as a fact, that the defendant Throckmorton, in making the negotiation with and in taking the deed from Stone, " acted for himself individually, with the intention to acquire the property for himself, and at the same time to extinguish all possible liability of his on account of and under the said agreement of February 9th, 1856. That his purchase was openly made, and was well known at the time, and that he made the purchase for his own benefit; and from thence hitherto he has had the actual, exclusive, open, notorious, and continuous possession of said property, claiming the same adversely to all the world, which has all along been of general notoriety." That the only sales made by the defendant of the property was a sale made to the United States Government, in 1867, of "Lime Point," so-called, and a sale of about eight hundred and eighty acres of the Saucelito ranch made to J. P. Thompson and others, in the year 1868, the aggregate of the two sales amounting to the sum of $390,000 ; and that at the time of the commencement of this action about sixteen thousand acres of the Saucelito ranch remained unsold and undisposed of.

The Court below further found, as a fact, that " after the delivery of the sheriff's deed to said Edward F. Stone, in December, 1863, all parties claiming under the said William A. Richardson abandoned all efforts and attempts to prevent the consummation of the sale of the Saucelito ranch property, and with reference to the Albion ranch and the San Diego property, the same were regarded as of no considerable value "; but this finding is in direct conflict with the *record evidence*, which shows, as already stated, that long after the making of the sheriff's deed, to wit, on the 12th of December, 1864, the defendant Throckmorton,

together with Maria A. Richardson, Stephen Richardson, Manuel Torres, Mariana Torres, and Manuel Torres as executor of the estate of William A. Richardson, deceased, and others, in an action brought for the purpose, and after trial thereof, obtained an order of the Fifteenth District Court, declaring the sale to Stone fraudulent and void, and directing judgment accordingly; and that afterwards a compromise of the controversy was effected, resulting in the execution of the deed from Stone to the defendant Throckmorton. The Court below further found, as a fact, " that the plaintiffs had actual notice of the said purchase from said Edward F. Stone by defendant Throckmorton, at or about the time it was made, and that he claimed to make it for himself, and in denial of any right of the plaintiffs, and that until about the time of the commencement of this action neither the said Polhemus, administrator of the estate of said Janes, or these plaintiffs, after the time of the said administrator's sale to said Stone of the agreement of February 9th, 1856, ever set up or made any claim, under or by virtue of said agreement, to any interest in the real property mentioned in said agreement, or to the proceeds thereof." This finding is not sustained by the evidence. After a careful examination of the record, we find no evidence tending to show that either of the plaintiffs ever, at any time prior to the making of the demand on the defendant just before commencing this action, in 1875, had any notice that defendant claimed to have made what the Court terms the "purchase" from Stone "for himself, and in denial of any right of plaintiffs"; and as to three of the four plaintiffs, they are still minors, and at the date of the deed—February 25th, 1865—must have been of very tender years. The evidence fails to show that the repudiation of the trust by the defendant Throckmorton, if there was a trust, ever was made known to the administrator of the estate of Janes, or to either of the plaintiffs, until the demand and refusal in 1875.

The plaintiff Lucy H. Janes is the widow of Horace P. Janes, deceased, and on the 5th of March, 1875, was duly appointed guardian of the other plaintiffs, who are minor children of herself and the said Horace P. Janes.

On the 22d of May, 1875, plaintiffs commenced the present action against the defendant Throckmorton, for the purpose of

having him adjudged the trustee of plaintiffs of the one-fifth part of all money proceeds of sales of the lands remaining on hand, and of the undivided one-fifth part of all the lands remaining unsold, after deducting the amount of the indebtedness of William A. Richardson, and the expenses attending the sale of the land, and the settlement of the indebtedness; and to compel defendant to account and pay to plaintiffs the one-fifth part of such proceeds, and to convey to them the one-fifth part of the remaining lands.

Several defenses are relied upon to defeat the action. It is contended, on behalf of the defendant, first, that the covenant of February 9th, 1856, was a personal covenant purely, providing for no interest in real estate, and that no trust respecting the lands thereby arose; second, that conceding that the covenant of February 9th, 1856, gave an interest in real estate, and that defendant held the property in trust to the extent therein mentioned, still that by the deed from Stone he got a perfect title, discharged of all trust, and further, that in no event can he, under the pleadings in this case, be charged with any trust in respect to the conveyance from Stone; third, that if the action could be maintained at all, it could only be by the administrator of the estate of Horace P. Janes, deceased, and that in no event can his heirs maintain it; and fourth, that the action is barred by the Statute of Limitations. We will consider the defenses in the order in which they have been stated.

1. The deed and covenant of February 9th, 1856, were parts of the same transaction, and must be considered together, in the light of the circumstances that are shown to have existed at the time. Thus considered, it appears that William A. Richardson was then the owner of a large amount of land which was heavily incumbered. In order to pay his debts, and to save a homestead for himself and something for his children, if possible, he entered into the arrangement with the defendant Throckmorton culminating in the execution of the deed and covenant. By the deed, the legal title to all the property was conveyed to Throckmorton, not, as said in the brief of defendant's counsel, absolutely and without conditions, but *upon the conditions and for the purposes* stated in the contemporaneous covenant—in substance, as we construe the covenant, as follows: That Throck-

morton should sell as much of the lands conveyed to him as he should deem necessary to discharge all of the indebtedness of William A. Richardson; and if, after the discharge of such indebtedness and the payment of the expenses incident thereto, any money remained from the proceeds of the sales, he would pay over to Stephen Richardson and Mariana Torres the one-fifth part of it; and, in the event he did not sell *all* of the lands, he would, after discharging the debts and paying the expenses incident to doing so, convey to said Stephen Richardson, for the use of Maria A. Richardson, wife of the said William A. Richardson, the homestead (which he was to reserve from sale, if possible) upon which William A. Richardson then resided, and to Stephen Richardson and Mariana Torres the undivided one-fifth part of all lands remaining unsold. We do not consider the time within which Throckmorton agreed to sell the lands, namely, three years, of the essence of the contract, or material to the disposition of the case. The general rule of equity is, that time is not of the essence of the contract; and we discover nothing in the present case to take it out of this general rule. Throckmorton accepted the conveyance of the lands, upon the conditions and for the purposes already stated, and expressly limited his liability to the amount of the proceeds which he should realize from the sale and disposition of the property.

In other words, he assumed no personal liability for Richardson's debts, but was to devote to the matter his services and time, in consideration of which he was to retain four-fifths of all the moneys and four-fifths of all the land (except the homestead) he could save, after discharging the indebtedness of William A. Richardson. That Throckmorton, in accepting the conveyance of the lands upon the conditions and for the purposes stated in the covenant, assumed trust relations with the beneficiaries, and, to the extent of the rights reserved to them by the covenant, thereupon became their trustee, we think very clear. In *Seymour* v. *Freer*, 8 Wall. 202—a case very similar in principle to the present—the Supreme Court of the United States said: "A trust is where there are rights, titles, and interests in property distinct from the legal ownership. In such cases, the legal title, in the eye of the law, carries with it, to the holder, absolute dominion; but behind it lie beneficial rights

and interests in the same property belonging to another. These rights, to the extent to which they exist, are a charge upon the property, and constitute an equity which a court of equity will protect and enforce whenever its aid for that purpose is properly invoked. Interests in real estate, purely contingent, may be made the subjects of contracts and equitable cognizance, as between the proper parties. The object of the trust here was to sell the property within the time limited, and, after deducting from the proceeds the outlay, with interest and taxes, to pay over to Price one-half of the residue. To this extent, Seymour was a trustee, and Price the *cestui que trust.* They had a joint interest in the property. Seymour held the legal title, but the rights of Price were as valid in equity as those of Seymour were at law." (See also, *Hearst* v. *Pujol,* 44 Cal. 230 ; *Watts* v. *Ball,* 1 P. Wms. 108.)

But the doctrine of equitable conversion is invoked by the defendant; and, it is said, that as to the beneficiaries, the land, under the agreement, became personal estate, and their interest personal property. *Dodge* v. *Pond,* 23 N. Y. 69; *Lynn* v. *Gephart,* 27 Md. 547, and 2 Story's Eq. Juris. § 1214, are cited by defendant's counsel in support of this position. In *Lynn* v. *Gephart,* the Court cites the section from Story, which reads thus: "The inclination of courts of equity upon this branch of jurisprudence is not generally to change the quality of the property, unless there is some clear intention or act by which a definite character, either as money or as land, has been unequivocally fixed upon it throughout "; and adds, that " if this intention do not clearly appear, the property retains its original character."

*Dodge* v. *Pond* was a case where a testamentary disposition was involved; and it was held, that where a testator authorizes his executors to sell real estate, and it is *apparent* from the general provisions of the will that he intended such estate to be sold, the doctrine of equitable conversion applies, although the power of sale is not in terms imperative.

In *White* v. *Howard,* 46 N. Y. 162, the Court says: "To constitute a conversion of real estate into personal, in the absence of an actual sale, it must be made the duty of and obligatory upon the trustees to sell it in any event. Such conversion

rests upon the principle that equity considers that as done which ought to have been done. A mere discretionary power of selling produces no such result." And in *Bleight* v. *The Manufacturers' and Mechanics' Bank*, 10 Pa. St. 132, it is said: "In order to change real into personal estate, it is essential that the direction to convert be positive and explicit; that the will, if it be by will, or the deed, if it be by contract, decisively fix upon the land the quality of money. (*Symons* v. *Rutter*, 2 Vern. 227; *Walker* v. *Denne*, 2 Ves. J. 170–185.) But this characteristic nowhere appears. The deed is not imperative that the land shall be sold. It contains nothing more than a power to sell, leaving it discretionary with the trustee whether he will sell or not. Indeed, it is doubtful whether he had authority to sell, except in the contingency it was necessary to pay the annuity. To establish a conversion, a will or deed must direct a sale absolutely, or out and out for all purposes, irrespective of contingencies, and independent of all discretion."

The most that can be claimed here is, that Throckmorton had the *discretion* to sell *all* of the land; but so far from its being obligatory upon him to do so, it was manifestly contemplated that a portion of it might be saved from sale. What, then, was the character of the interest of Stephen Richardson and Mariana Torres under the covenant? That it was an interest in the lands, we entertain no doubt. Contingent, it is true—contingent on the exercise of Throckmorton's discretion to sell all of the land, and upon the sufficiency of the lands to pay the debts. But it was none the less an interest in the lands. In *Biggs* v. *Bickett*, 12 Ohio St. 49, Biggs had conveyed his lands in fee to Hammond, for the purpose of holding them, charged with the payment of B.'s debts, and after the expiration of one year from the date of the deed, upon the request of any one of the creditors who were named in the deed, Hammond was to proceed to sell so much of the land as should be necessary to pay the creditors, and that upon the payment of the debts, the lands, or the residue thereof, should be reconveyed to Biggs. In that case, the trustee had the power to sell all of the land in order to pay the debts, and all of it might have been required for that purpose; in which case, there would of course have been none to reconvey to Biggs. Biggs died before any of the land was sold;

and the Supreme Court held that B. had an equitable interest
in the land, and that his interest was real estate, and subject to
sale as real estate by the Probate Court. (See also *Andrews*
v. *Hobson's Admr.* 23 Ala. 234; *Johnson* v. *Fleet*, 14 Wend.
176.)

In the brief of counsel for defendant, it is said that "it is a
fair test of the quality of this interest whether or not, if (say)
on the day prior to Janes's death, a judgment creditor of his
could have sold it as real property on execution, and conveyed
it to a purchaser." If that be a test, we think there is no doubt
that it could have been so levied on and sold. (*Kennedy* v.
*Nunan*, 52 Cal. 326; Freeman on Executions, § 188; *Leroy* v.
*Dunkerly*, 54 Cal. 552.)

2. Holding, as we do, that defendant became a trustee under
the deed and covenant of February 9th, 1856, for Stephen Rich-
ardson and Mariana Torres, to the extent of the rights thereby
reserved to them, and that their interest thereunder was an in-
terest in the lands, it becomes necessary to inquire, next, what
effect, if any, upon the rights of their successor in interest—
Horace P. Janes—was had by the sheriff's sale to Stone, under
the decree of foreclosure of the Ricketson mortgage, the nego-
tiation between defendant and Stone, the deed from Stone to
defendant, the purported sale of the Janes interest under the
order of the Probate Court, and its purported transfer by Stone
to defendant.

It must be borne in mind that, at the time of the conveyance
of the property to Throckmorton, and of the execution of the
covenant, on the 9th of February, 1856, the Ricketson mortgage
was about to be foreclosed, and the Black mortgage had already
been foreclosed and been ripened into a decree. It was for the
very purpose of discharging these liens and the other indebted-
ness of William A. Richardson, and of saving some part of the
property, if possible, that the lands were conveyed to Throck-
morton with the power to sell, etc. Throckmorton accepted the
trust upon the conditions already stated. It was his duty to
use his best exertions to sell the lands and discharge the liens.
This he did, but failed prior to the time of the sale under the
foreclosure of the Ricketson mortgage. Nor did he cease his
efforts then. After the sheriff's certificate of sale had been

issued to Stone (the purchaser at the foreclosure sale), Throckmorton, in connection with Torres, as executor of the estate of William A. Richardson, deceased, and others, commenced the action for the purpose of vacating and annulling the sale. In commencing and in prosecuting that action, he was acting *as trustee*, for in the complaint, which was signed and verified by Throckmorton himself, it is expressly declared that in giving the instructions to the sheriff as to the manner in which he should sell the property under the decree in the Ricketson case, he, Throckmorton, and Torres, as executor, were " *acting in the interest and on behalf of themselves and the other complainants* "—two of whom were Stephen Richardson and Mariana Torres; and the failure of the sheriff to follow the instructions was one of the grounds relied on in the complaint as entitling the complainants to the relief sought. As trustee, Throckmorton commenced that action, as trustee he prosecuted it, and as trustee he obtained, on the 12th day of December, 1864, the decision of the Court declaring the sale made to Stone fraudulent and void, and also declaring null and void the sheriff's deed which had in the mean time been issued to Stone. In this condition of affairs the negotiation for a compromise was entered into between Throckmorton and Stone, resulting in the settlement by which Stone executed to Throckmorton a deed for all his interest in the property for the sum of $45,000. This settlement included the discharge of the Ricketson and Black mortgages, and also the Watson judgment against Throckmorton individually. In order to obtain the $45,000 to effect this settlement, Throckmorton executed his promissory note therefor, and secured its payment by a mortgage on the Saucelito rancho. At the same time he also obtained, in the same way, namely, by executing his notes and securing their payment by mortgages on the Saucelito ranch, $30,000 additional, with which he settled and discharged the other indebtedness of William A. Richardson; and after effecting the settlement with Stone, Throckmorton and the other parties to the suit against Stone, on the 7th day of March, 1865, went into Court, and, by consent of all the parties, obtained an order vacating the order previously made annulling the sale and deed, and caused the suit to be dismissed. Under such circumstances, how can it be said that Throckmorton was

not acting as trustee? In what character was he acting when he borrowed the $30,000 with which to discharge the indebtedness of William A. Richardson, then held by Barron and others, if not as trustee? And yet this money was obtained at the same time and in the same way as that obtained with which to settle with Stone, namely, by executing his notes and securing their payment by mortgages on the trust property. It was by virtue of the trust only, and in pursuance of the trust, that he brought the action against Stone to annul the sale to him, and it was by virtue of his trust only that he was in position to mortgage the property and obtain the money with which to effect the settlement; and, whatever his intentions may have been, the law is, that the interest thus acquired inures to the benefit of the *cestuis que trust* to the extent of their rights under the covenant. (*Pratt* v. *Thornton,* 28 Me. 355; *Joor* v. *Williams,* 38 Miss. 546; *Jewett* v. *Miller,* 10 N. Y. 402; *Morgan's Heirs* v. *Boone's Heirs,* 4 Mon. 297; *Brantley* v. *Kee,* 5 Jones Eq. 333; *Crutchfield* v. *Haynes,* 14 Ala. 52; *Spindler* v. *Atkinson,* 3 Md. 410; *Van Epps* v. *Van Epps,* 9 Paige, 237; Story's Eq. Juris. §§ 321, 322.)

The objection that the plaintiffs should have alleged in their complaint the Stone transaction, and have asked that the title conveyed by him to defendant be decreed to be held in trust for plaintiffs, we think not well taken. Defendant, in effecting the settlement with Stone, and in taking the conveyance from him, did not commit a breach of his trust, but, on the contrary, was, as we have shown, acting in the line of his duty as trustee. The title he thus obtained, upon well-settled principles, inured to the benefit of his *cestuis que trust,* to the extent of their interests. The defense now asserted, by way of answer, that by that deed defendant obtained the title discharged of all trust, cannot be sustained by a court of equity. Nor were the plaintiffs bound to anticipate that such a defense would be made. It was sufficient for them to have alleged the original trust, which they did. That existing, the law declares the effect of the conveyance in question. To this it may be added, that the plaintiffs' reply to this defense is, under our system, pleaded by operation of law. (*Curtis* v. *Sprague,* 49 Cal. 301.)

Having determined that, under the agreement, Stephen Rich-

ardson and Mariana Torres had an interest in the land, and it being undisputed that by various assignments their interests were acquired by Horace P. Janes, and were vested in him at the time of his death, it follows that the attempted sale thereof by the administrator of the Janes estate passed no title. Real estate of a deceased person can only be sold in the mode provided by law. (*Haynes* v. *Meeks*, 20 Cal. 288; *Townsend* v. *Tallant*, 33 id. 45; *Woods* v. *Monroe*, 17 Mich. 243.) The attempted sale of the Janes interest under the order of the Probate Court directing a sale of the *personal* property of the estate, and all proceedings thereunder, were void.

3. Are plaintiffs the proper parties to bring this action? On the part of the defendant, it is argued that the administrator of the estate of Janes alone can bring it. On the other side, it is contended that an administrator has no power except such as is expressly conferred by statute, and that the statute nowhere confers upon him the power to bring a suit to enforce a trust or compel a conveyance of land. In *Chapman* v. *Hollister*, 42 Cal. 463, it is said: " On the death of the ancestor, his title to real estate passes to the heir or devisee, subject, however, to the right of possession of the executor or administrator for the payment of debts. (Probate Act, §§ 114, 194; *Becket* v. *Selover*, 7 Cal. 215; *Meeks* v. *Hahn*, 20 id. 627; *Matter of Estate of Woodworth*, 31 id. 604.)"

That the administrator is entitled to the possession of all the property of the estate, real and personal, during the administration, and can maintain an action for the recovery of the possession of all such property, is not denied by counsel for plaintiffs; but he urges, and we think correctly, that the statute does not confer upon him the power to compel a *conveyance of the title to the property* to himself.

The present action is brought to establish a trust, and to compel defendant to convey the *legal title to real estate* to the plaintiffs as heirs at law of Janes. On his death, his title, then an equity, passed to the heirs, as was held in the cases last cited; and unless it can be maintained, which we think cannot be done, that the administrator is entitled under our statutes to have the *title* to the property conveyed to him, it would seem clear that he is not the proper party to bring this action.

Section 194 of the Probate Act (§ 1581, Code Civ. Proc.), and § 114 of the same act (§ 1452, Code Civ. Proc.), tend very strongly to support this view. By the latter section, it is provided, that "*the heirs or devisees may themselves*, or jointly with the executor or administrator, maintain an action for the *possession of the real estate, or for the purpose of quieting title* to the same *against any one except the executor or administrator*." And by § 194 it is provided, that, for the purpose of *bringing suit to quiet title*, the possession of the administrator shall be deemed the possession of the *heirs*. Section 119 of the Probate Act relates entirely to personal property.

Section 1698 of the Code of Civil Procedure answers the objection in behalf of the creditors of the estate of Janes. It is as follows: "The final settlement of the estate, as in this chapter provided, shall not prevent a subsequent issue of letters testamentary or of administration, or of administration with the will annexed, if other property of the estate be discovered, or if it become necessary or proper, for any cause, that letters should be again issued."

4. There only remains to consider the defense of the Statute of Limitations. That this defense cannot avail the defendant, in view of the fact that the record fails to show that defendant's adverse holding was ever made known to either of the plaintiffs, or to the administrator of the estate of Janes, is clear. In *Oliver* v. *Piatt*, 3 How. 411, the Supreme Court of the United States said: "Time begins to run against a trust only from the time when it is openly disavowed by the trustee, who insists upon adverse right and interest, *which is fully and unequivocally made known to the cestui que trust*." In *Hearst* v. *Pujol*, 44 Cal. 235, it is said: "But as between trustee and *cestui que trust*, in the case of an express trust, the Statute of Limitations does not begin to run until the trustee repudiates the trust by clear and unequivocal acts or words, and claims thenceforth to hold the estate as his own, not subject to any trust, *and such repudiation and claim are brought to the knowledge of the cestui que trust*. (Perry on Trusts, §§ 863, 864.)"

Section 190 of the old Probate Act has no application to a case like the present, where no sale of real estate was attempted and none made.

The conclusion at which we have arrived works no wrong to the defendant. He is entitled to four-fifths of all the unsold land (except the homestead), and to four-fifths of all the money he has succeeded in saving, after deducting the amount of the indebtedness of William A. Richardson, and all reasonable expenses incurred by him in the execution of his trust. It was for this that he stipulated to devote his services. Good conscience and fair dealings demand that he take nothing more, but surrender to the plaintiffs the portion that is theirs.

Judgment and order reversed, and cause remanded for a new trial.

MORRISON, C. J., and McKEE, J., concurred.