TIM. E. COOPER ET AL. *v.* S. H. COOPER, ADM'X.

1. LEGACY. *Express trust.*

Where a legacy is to be paid by an executor as such and in the course of administration, it is an express trust which the legatee is entitled to assume the executor intends to execute.

2. SAME. *Statute of limitations.*

Until the executor has been discharged from further accounting, the trust is an open, subsisting, and acknowledged one, and mere delay on his part in settling with the court and securing his discharge is not such a breach of the trust as will set the statute of limitations in motion in his favor.

3. SAME. *Same.*

Although a legatee may be barred by the statute of limitations of six years from maintaining an action at law for his legacy (which is not decided), he may, nevertheless, have payment in the court administering the trust, provided the circumstances are not such as to require a denial of relief on the ground of *laches.*

4. TRUST FUNDS. *Investment by trustee in his own name.*

If a trustee invest the trust funds in property, the *cestui que trust* has an election to take the property or to hold the trustee for the money, and may even have the property sold to produce the fund and charge the trustee with the deficit, if any.

5. SAME. *Same.*

If an executor at a sale for the joint benefit of himself as executor and of another, toward whom he stands in no trust relation, purchase the property at a bargain with funds of the estate, the bargain will be for the benefit of his *cestuis que trust,* who will be entitled to the whole property or its proceeds, notwithstanding if it had brought full value at the sale a portion of the proceeds would have gone to his co-complainant.

6. TRUSTS. *Statute of limitations.*

The statute (§ 2696, Code 1880) is applicable to all trusts "not cognizable by the courts of common law," whether express or implied, but only begins to run when there is a cause of action. In cases of express trusts, which are subsisting and acknowledged, it does not run because there is no cause of action ; it is only through breach of such trusts that the statute becomes active, and mere delay in performing the trust is not such a breach.

7. SAME. *Rule as to implied, resulting, and constructive trusts.*

Implied, resulting, and constructive trusts are subject to the statute, which begins to run from the time the wrong is committed by which the party becomes chargeable by legal implication. The nature of such trusts implies an adverse relation between the parties and that a cause of action exists.

8. SAME. *Same. Case in judgment.*

Where an executor at a sale under a decree in his favor bought the property in his own name, and paid for it by giving to the commissioner of sale his receipt as executor for the amount of his bid, and subsequently resold the property at a large advance ; *held* (on exceptions to his final account praying to charge him with the latter amount), that as to the amount of his bid he was an express trustee, and chargeable therewith, notwithstanding the lapse of time, but as to the property and its proceeds he was a resulting or constructive trustee and could not be charged therewith after the lapse of ten

years from the time the trust first arose ; *held further*, that proof of an intention in the executor to hold for the benefit of the estate would not avail to take the case out of the statute, unless it amounted to an agreement sufficient to create an express trust.

APPEAL from the Chancery Court of Holmes County.

HON. R. W. WILLIAMSON, Chancellor.

The facts are stated in the opinion.

Mr. Justice Cooper, being a party to the suit, and Mr. Justice Campbell, being related to some of the parties in interest, took no part in the decision. The case was heard by a special court composed of Mr. Justice Chalmers and Messrs. Ed. Clark and S. S. Calhoon, special judges.

*L. Brame*, for appellants, argued orally and in writing.

1. The statute of limitations cannot be invoked by an executor against the claim of a legatee. Angell on Lim., § 90; *Thompson* v. *McGaw*, 2 Watts (Pa.) 161; *Faulk* v. *Brown*, 2 Watts 209. And this, notwithstanding the existence of the legal remedy. *Hedges* v. *Norris*, 32 N. J. Eq. 192; see also *Roberts* v. *Roberts*, 34 Miss. 322; Schouler's Exrs. and Admrs., § 533 and notes; *Donaldson* v. *Raborg*, 26 Md. 312 and cases cited; Wood on Lim., § 35, citing *Young* v. *Cook*, 30 Miss. 320; *Jordan* v. *McKenzie*, 30 Miss. 32; *Wren* v. *Gayden*, 1 How. (Miss.) 365, criticising *Kane* v. *Bloodgood*, 7 John. Ch. 123, and approving *Decouche* v. *Sonetier*, 3 John. Ch. 216. In this case Chancellor Kent places a legatee and a distributee on exactly the same ground as to this question. And what is a legatee but an heir or distributee, made so by the will of the testator? The executor occupies exactly the same relation of trust to either. *Pinkerton* v. *Walker*, 3 Hay. (Tenn.) 221; 26 Miss. 395; Code of 1871, § 1169. While it is held in some of the cases that the statute of limitations may be plead in an action for a legacy, that is, an independent suit brought to enforce its payment, I do not think that a single case can be found where the statute has been successfully invoked in the matter of the administration of the estate. If any such case be found, it is opposed to principle, and cannot be considered an authority. The case of *Kane* v. *Bloodgood* did not involve a legacy, nor was the question

of the effect of the statute of limitations in a case of an *express* continuing trust before the court. The true rule is that announced in *Decouche* v. *Sonetier*, 3 John. Ch. 216. This is the rule adopted by the courts of Pennsylvania, and, as we have seen, approved by our court in the case of *Wren* v. *Gayden*, 1 How. (Miss.) 365. It must be remembered that the defense relied upon here depends entirely upon the statute; without an express provision, no action is barred. The defense of the statute of limitations is *strictissimi juris*, never favored or enlarged by intendment or construction, and certainly it will not be extended by implication or liberality of construction in order to protect a trustee who has been guilty of a violation of his trust. In the case of *Dobbins* v. *Halfacre*, 52 Miss. 561, it was decided that a creditor of an estate who had reduced his claim to judgment could sue at once on the bond of the administrator for a *devastavit* without waiting for a final settlement of the administration; but it was said that a distributee could not sue, because it could not be known in advance of an accounting what he was entitled to receive. The same reason was applied here to prevent these legatees from bringing an action at law in advance of a settlement. See 23 Miss. 312. It can never avail a party to say that the statute of limitations would be a good defense in another form of action for the same cause. *Donaldson* v. *Raborg*, 26 Md. 312. Mrs. Cooper, as administratrix of her husband, stands in his shoes in the matter of the administration, which was left open and unsettled by him. See *Pines* v. *Patty*, 43 Miss. 343. No court has ever held the statute of limitations to be a bar to a continuing trust. 2 Perry on Trusts, § 863. See the many cases cited in Geo. (Miss.) Dig. 481. There was no repudiation of the trust and adverse holding of the trust fund, so as to put the statute of limitations in operation, even if it could have been applicable under any circumstances. 2 Perry on Trusts, §§ 863–864 and notes. On giving a refunding bond, a distributee or legatee may, in advance of a final settlement, compel the executor or administrator to pay over the legacy or distributive share. "But the *legatee or distributee* shall not be required to give such bond *after a final set-*

*tlement.*" Code 1871, § 1175; Code 1857, p. 454; Code 1880, § 2076. The four years' statute of limitations (Code 1871, § 2155) has no application. This is not an "*action brought against an executor or administrator.*" Besides, Mrs. Cooper, as administratrix, has no power or authority in respect to the estate of T. T. Cooper, except to settle the accounts of her intestate under the statute. (Code 1871, § 1120; Code 1880, § 1997.) See authorities cited in Geo. (Miss.) Dig. 270.

2. Even in cases where there is no trust, as, for instance, a fraudulent purchase of property by a debtor to defeat creditors, if there is a profit—if the land increases in value—the creditors are entitled to the benefit of it and are not restricted to a recovery of the amount invested by the debtor in purchasing the property. *Simmons* v. *Ingram,* 60 Miss. 886. Here the executor purchased the property at an inadequate price and gave his receipt for the amount as executor, and *charged the estate with his attorney's fees and other costs and expenses of the suit.* It is therefore to be presumed that he bought in the property for the benefit of his *cestuis que trust,* and that he "held according to his title." Angell on Lim., §§ 166 and 168; *Donaldson* v. *Raborg,* 26 Md. 312, 327. The rule that a trustee cannot purchase the trust property applies as well where the sale is made by a third party as by the trustee himself. Here the land was the only security for the debt. See *Staats* v. *Bergen,* 17 N. J. Eq. 397, and authorities there cited. It is said that a trust arose only as to the one thousand nine hundred and fifty-eight dollars bid for the land, and that, as the executor had previously paid off debts in excess of that amount, nothing was left to be accounted for. But this position is untenable. As held in *Simmons* v. *Ingram,* 60 Miss. 886, we were entitled to the *lands.* The rule contended for by counsel would operate to enable the trustee to make the profit himself, and this can *never* be done. 1 Perry on Trusts, § 427–429.

3. There was a partnership, and J. W. Cooper was a partner. See *Berry* v. *Folkes,* 60 Miss. 576. It is clear that the debts of this partnership could not be shifted from the

assets of the firm so as to be charged upon this special legacy given by the will of one of the individuals comprising that firm. It is undisputed that the partnership property over and above all debts was and is - of great value. The assets of that firm would have to pay its debs. These debts could not come in for prior payment out of a legacy given by the will of one of the partners. Of course, creditors, could make any of the property of either of the partners liable for their debts. But the question here is, whether or not, *as between those holding the firm property and the legatees,* the firm debts are to be made a charge on this legacy. In the absence of an express provision in the will that the term debts should also include the liabilities of a *firm* to which the testator belonged, it is clear that only his individual debts were intended to be charged on this legacy. A. legacy is a gift, a gratuity, especially intended for the legatee, and is not to be charged with the debts of the testator in preference to the general estate of the testator without express words to that effect or necessary implication.

4. Funeral expenses and costs of administration are not debts of the testator, and will not be included in a provision made in the will for the payment of debts out of a particular fund on which they would not otherwise be chargeable. *Currie* v. *Murphy,* 35 Miss. 473.

5. It will be remembered that the Hemphill land in Hinds County had no connection with the partnership. The testimony and the records show that T. T. Cooper and George M. Barnes were merely tenants in common of this land, and the bill filed against Hemphill showed this. J. W. Cooper, Tim. E. Cooper, and George W. Barnes, as legatees, took *per capita,* and not *per sterpes,* that is to say, they took one-third each. *Fisher* v. *Skillman,* 18 N. J. Eq. 229; *Smith* v. *Ashurst,* 34 Ala. 208.

*Shelton & Shelton,* for appellee.

1. This is no implied trust, but an express charge designating a fund to pay debts and imposing priority on that fund, not by implication but by express direction. Hill on Tr. 346; 2 M. & K. 600; 2 Ves. 313; 1· How. U. S. 134; 2 Henn. & Munf. 89; 5

Metc. 280 ; 1 Phillim. R. 35.   The will provides for a division of the excess into two equal parts—one to J. W. Cooper and the other to G. M. Barnes and T. E. Cooper.   The first *and* couples J. W. Cooper with the other two jointly affected ; the last *and* couples only those other two.   There is nothing in the will to show that the grammatical construction is not the right construction.

2. The claim of appellants was barred by the limitation of six years before they filed their petition. J. W. Cooper's annual accounts show payments made on proper vouchers before July, 1871, over ten thousand dollars, of which near nine thousand dollars were properly chargeable on the Hemphill fund, but of which nine thousand dollars about three thousand and sixty dollars were partnership debts of Barnes & Cooper, of which T. T. Cooper was a member, Barnes having died in 1864.   All these J. W. Cooper, executor, in his four annual accounts claimed to be debts of T. T. Cooper's estate, probated against that estate and paid by him as executor of the will, and they were all allowed by the court as such debts of T. T. Cooper so paid.   The claim is barred by the limitation of six years in § 2151 of the Code of 1871.   On the matters involved in this suit, when did the right to sue (whether in law or equity) accrue?   I will concede that it did not until, on May 12, 1874, the last payment on the Hemphill fund was made by Green & Echols.   If, therefore, the right to sue either in law or equity and recover any part of that fund has ever existed, it has existed from that date of *May* 12, 1874, when Cooper received the care of the Hemphill fund.   J. W. Cooper died on July 27, 1874.   The right to sue therefore existed two months and fifteen days during his life.   His wife administered on his estate August 4, 1874.   She could not be sued until six months after that date, *viz. :* February 4, 1875. Code of 1871, § 1184.   Complainant's petition was filed June 14, 1881, six years and four months and ten days after Mrs. Cooper could have been sued ; add the two months and fifteen days during J. W. Cooper's life, and we have six years six months and twenty-five days.   When, therefore, the petitioner brought this suit every possible remedy at law was barred by said six years' limitation. Possibly it may be urged as an answer to this limitation that at law

an action could not have been sustained. *That position I controvert.* Ever since 1848 we have had statutes declaring that " any person having a legacy bequeathed in any last will may sue for and recover the same by action at law." Code of 1848, p. 670, § 110 ; Code of 1857, p. 455, § 130 ; Code of 1871, § 1177 ; Code of 1880, § 2085. Therefore a remedy at law has existed all the time if this be such a legacy as could have been recovered at law after the executor collected the fund from which it was to be paid by him, and had paid the debts *primarily* charged on it by the will. This case is simply a suit to recover a specific residuary money legacy to be paid out of a particular fund *after that fund has been realized by the executor,* and has been due and payable to the legatees more than six years. There is no question but that specific legacies may be recovered at law when according to the will they become due and payable. 11 S. & M. 70 ; 13 S. & M. 403 ; 30 Miss. 320; 2 S. & M. 60 ; 9 S. & M. 247 ; 40 Miss. 247. If any *residuum* has ever existed since May 12, 1874, during J. W. Cooper's lifetime, such a legacy is specific and the six years' limitation runs from that date. Unquestionably, there has been all the time since May 12, 1874 (when *all* of T. T. Cooper's debts had been paid and *all* of the fund realized), a remedy by suit at law, and if complainants have a remedy in equity such as they have invoked, then the jury's decision is *concurrent,* and the six years' limitation at law applies in equity and therefore to this suit. Since right of action has accrued there has been no trust that was not cognizable in a common law court ; no trust as to whether the remedy in a common law court was not as plain as any remedy in chancery, and therefore the limitation of six years would run ; that *principle* is declared by the statute and is well settled outside of it; it applies even to the two and a half months of J. W. Cooper's life, after May 12, 1874, but more forcibly applies to the time during which Mrs. Cooper has been subject to suit as administratrix of J. W. Cooper, which was six years and four months ; and this is true, even if we supposed (what is not true) that she has been in any way invested with the character of *trustee* for petitioners, whereas, if she is liable to suit it is only because she is administratrix of a trustee who is accused of a breach of trust, and not for any breach of her

own. Even if the trust existed as to J. W. Cooper during his life, his death ended it ; since his death, therefore, there has been no such thing as a trustee of the Hemphill fund. Mrs. Cooper was never trustee for petitioners, either *express* or *implied*, but if the latter, the said limitation would still run, for limitations run against *implied trusts*. There can be no pretense to more than an *implied* trust in her, and not that. 31 Miss. 272 ; 28 Miss. 92.

3. Another limitation equally fatal to appellants is that of four years, created by § 2155 of the Code of 1871. Mrs. Cooper qualified as administratrix August 4, 1874. That statute, therefore, is barred unless appellants can show something that takes this case out of the operation of that statute, for four years after her qualification had expired, August, 1878, about three years before appellants' petition was filed. Mrs. Cooper was not bound to plead the six years' limitation; she was bound to plead the four years' limitation. 57 Miss. 729; 53 Miss. 352; 48 Miss. 609; George's Dig. 486. See also Ang. on Lim., §§ 169, 170; 2 Paige Ch. R. 574; 7 John. Ch. 90; 4 Wash. C. C. R. 639; 5 Cow. R. 322.

4. What is the *amount of the fund* on which the will makes T. T. Cooper's debts a *first charge* and the *residuum* of which, after paying those debts, the will gives to the three persons? Of course, J. W. Cooper is not to be charged with the price at which he bid off the land, one thousand nine hundred and fifty-eight dollars, and also with the price at which he sold to Green & Echols, seven thousand and forty-four dollars, because on his purchase nothing was paid, only a receipt given. Green & Echols bought it from Cooper at seven thousand and forty-four dollars, which, with some interest, they paid to J. W. C. It is T. T. Cooper's interest on the latter sale that is charged with his debts by his will. The charges footing up six thousand six hundred and fifty-four dollars, I think a correct statement of T. T. Cooper's debts paid by J. W. Cooper, exclusive of the debts of Barnes & Cooper, and without interest, but the fund on which they are charged is, without interest, four thousand seven hundred and twenty-six dollars and forty-seven cents. On that basis the debts paid exceed the fund one thousand nine hundred and twenty-seven dollars and fifty-three cents. That basis

is certainly very liberal to the fund, gives it all of the principal *but no interest on it*, but on the other hand, charges it with no interest on Cooper's payments, which would double the interest on the fund, and it gives from the fund no fees or commissions to Cooper *for administering it*. If the Chancellor had found *specially* on that basis that there was no *residuum* of the fund, this court would not have reversed the finding to look into an interest account on the partnership feature hereafter to be developed.

5. If a testator's will charges his debts on his property, the charge takes effect according to the will; if on land, in priority to the personal property. The land must pay as far as it will pay. If, however, it only charges the debts on land but is silent as to priority, then because the law imposes that priority on the personalty, the law regards the land as secondary to the personalty. 3 Jar. on W. 452. If a will devotes first or exclusively a particular fund, the priority is imposed on that fund until exhausted, then on the personalty, then on the land. 3 Jar. on W. 411, 412. Such unquestionably is the order of priority under T. T. Cooper's will. Therefore, if said two *partnership debts* were debts of T. T. Cooper, a member of the partnership, the priority is imposed on T. T. Cooper's interest on the Hemphill fund *as a particular fund*, to pay them as well as his own debts. 3 Jar. on W. 401, notes; 3 Beav. 377; 5 Hare. 79. Petitioners have not sustained their allegations that J. W. Cooper was a member of the firm of Barnes & Cooper, which made the debts, and those debts must be regarded as partnership debts of G. M. Barnes and T. T. Cooper only.

*D. Shelton* also argued the case orally.

*C. V. Gwin*, on the same side.

1. The claim of the legatees, whether regarded as a direct, express, technical trust, as a constructive or resulting trust, or as a mere debt against the estate, is barred by the statute of limitations. In all cases of direct express trust where there is concurrent jurisdiction at law and in equity such trusts are as much within the statute of limitations as are constructive trusts and ordinary debts. Rev. Code 1857, art. 120 ; Rev. Code 1871, § 1177. Independent

of our statute enabling legatees to sue at law, a legacy, being a direct or express trust, is not affected by the statute of limitations, for without the enabling statute giving a remedy at law it is such a trust as is cognizable exclusively in a court of equity. But three things are necessary to constitute a trust which will not be subject to the bar of the statute. It must be—first, a direct trust; second, it must be of the kind belonging exclusively to the jurisdiction of a court of equity, and third, the question must arise between the trustee and *cestui que trust.* Angell on Limitation (6th ed.), chap. 16, § 166; *Kane* v. *Bloodgood,* 7 John. Ch. (N. Y.) 90; *Governor* v. *Woodworth,* 63 Ill. 254; *Haywood* v. *Gunn,* 82 Ill. 385; *Sloan* v. *Graham,* 85 Ill. 26. The only actions which could be brought at law for the recovery of a legacy are debt or covenant on the bond, or debt, assumpsit, case, trover, detinue, replevin, and by art. 120, Code of 1857, Code of 1871, § 1177, all of the actions above named were barred in six years (Code 1857, pp. 399, 400, 401, arts. 5, 20), except the actions on the bond, and they were barred in seven years from the cause of action. In cases of *concurrent jurisdiction at law* courts of equity regard the statute as absolutely binding on them. The periods prescribed by the statute are regarded and recognized in such cases as imposing a limitation upon the *cause of action itself,* and not merely upon the court in which it may be prosecuted. The limitation follows the demand whereever it may be sued or in whatever form it may be presented. The party is not permitted to evade the legal bar by a change of the form or former. And it is perfectly well settled that when there is concurrent jurisdiction in equity and at law the bar of the statute is as absolute, peremptory, and inexorable in one court as in the other. It acts *ex suo vigore,* and not by the discretion or courtesy of the court. *Mitchell* v. *Woodson,* 8 Ga. 567; *Goff et al.* v. *Robins,* 4 Ga. 153; *Edwards* v. *McGee,* 2 Ga. 149; *Mandiville* v. *Lane,* 6 Conn. 312; *McCrea* v. *Purmort,* 16 Wend. 460; *Sloan* v. *Graham,* 85 Ill. 26. And when a remedy at law was by statute given to legatees to recover a legacy, the statute of limitations was held to bar the claim of the legatees in. *Wisner* v. *Barnet et al., Extrs.,* 4 Wash. (C. C.) 639; *Souzer* v. *DeMeyer,* 2 Paige Ch.

574; *Rundle* v. *Allinson et al., Extrs.,* 34 N. Y. 181; *Knight* v. *Braunn,* 14 Md. 1; *Wood* v. *Wood,* 3 Ala. 756, opinion on p. 762; *Young* v. *Cook,* 30 Miss. 320.

2. As to the one thousand nine hundred and fifty dollars which the land sold for he was the *trustee of a direct trust.* As to the land and the seven thousand dollars received from Green & Echols, if a trustee at all he was the *trustee* in a *constructive* or *resulting trust.* Acting within the scope of his authority, he is a trustee by the *expressed* will of T. T. Cooper and the fund with which he deals is the specific and express fund with which he is intrusted by the express terms of the will. Acting without the scope of his authority and committing a breach of the *original express trust, the law construes him to be a trustee,* and the land which he bought with *trust funds created* by the *will* is by the *law construed* into a *trust fund.* The possession of land or other property by a trustee under a resulting trust is not the possession of the *cestui que trust.* This is true only of a direct or express trust. *Prewett* v. *Buckingham,* 28 Miss. 92. And the statute of limitations runs against such trust, *Watts* v. *Gunn,* 53 Miss. 505, and cases cited, independent of the provisions of art. 31, Code of 1857, and § 2175, Code of 1871.

3. The claim of the legatees has been, since the death of J. W. Cooper, a mere debt against his estate, and they stand in no better attitude than any other creditors. If this claim was due by him as a trust fund during his lifetime the relation of trustee and *cestui que trust* was dissolved and ended by his death. Even could they point out the particular property in which the seven thousand dollars of the Green & Echols money was ultimately invested— that property which is the present fruit of the original purchase of the Hemphill land—it would not alter the character of the liability of J. W. Cooper's estate, except to release it from a general pecuniary charge if the specific bond was applied to discharge the claim. Failing in this, being unable to trace the seven thousand dollars and to identify the property and to *subject it* to their demands, their only other right is to make the trustee *personally, individually* answerable to them for *their loss* and *the profits* which he

has reaped by an abuse and non-performance of the trust. No relation of trust exists between the administratrix and the legatees of T. T. Cooper. Her only dealing in regard to the estate of T. T. Cooper is to show to the court the state of the account of her intestate as executor of T. T. Cooper. But no part of the estate of T. T. Cooper comes into her hands as administratrix. That goes at once to the administrator *cum testamento annexo* of T. T. Cooper, if there had been one. These legatees are not creditors of the estate of T. T. Cooper. They have no claim whatever on the general estate of T. T. Cooper. Their only remedy against J. W. Cooper, executor of T. T. Cooper, would have been to demand and recover the specific fund, devised as a legacy, and on default on the part of the executor, to have recovered a judgment against the executor for a sum of money equal to their legacy, to be levied, *not de bonis testatoris*, but *de bonis propriis*, an individual and personal judgment, with which the general devisees of T. T. Cooper can have no possible concern. Even during the lifetime of J. W. Cooper, when the means of identifying the trust fund and its proceeds were lost, the legatees stood as mere creditors of J. W. Cooper. Perry on Tr., § 128. But certainly upon the death of J. W. Cooper, the claim of the legatees because a mere debt against the estate of J. W. Cooper on account of a liability incurred by him during his lifetime, and a judgment against Mrs. S. H. Cooper would be levied of the goods of her intestate in her hands. All claims registered against the estate of T. T. Cooper were either paid off or barred by the statute at the time of filing the fourth and last annual account, July 1, 1871. Long before July 1, 1871, the legatees had their legal remedy to enforce their legal demand, but we have selected this period for the reason that the records of the administration of the estate of T. T. Cooper gave them notice of their right. Upon these records they now act, and upon them they might have acted then. What the records then disclosed is all they now know. While the liability of an executor or administrator to account to the court continues as long as the trust continues, still this no more saves the claim of a *legatee* from the bar of the statute than it saves the

claim of any other creditor; and he can no more be compelled to pay or charge the estate of his testator or intestate with a claim *founded* upon a *legacy* and barred by the statute, than a claim *founded* upon a *promissory note* and barred by the statute. The statute of limitations began to run against the claim of the legatees: First. When all the debts, with the payment of which a charge had been imposed by the will on the Hemphill notes, had in fact been paid off and discharged, and the bar was complete in six years thereafter; and second, from the date of qualification of Mrs. S. H. Cooper as administratrix, the bar of the statute being complete in four years and six months thereafter. And this is true whether the claim of the legatees be regarded as a direct technical trust, a resulting trust, or a mere debt.

4. It will not do to say that the sufficiency of the amount collected on the Hemphill notes must be determined by comparing the seven thousand dollars with the debts, and to claim that " excess" because the legatees can claim no interest in the seven thousand dollars until they have shown an interest in the one thousand nine hundred and fifty-eight dollars, and their interest in the seven thousand dollars is derivable alone from and is exactly proportionate to their interest in the one thousand nine hundred and fifty-eight dollars. And while to show an interest in the " *excess* " of the one thousand nine hundred and fifty-eight dollars is to establish a proportionate interest in the " *excess* " of the seven thousand dollars, yet the converse of this proposition is not true. If, after the purchase of the land by J. W. Cooper, and before the sale of it by him to Green & Echols, these legatees had filed a bill in equity to have a trust declared and established in their favor in this land, Mr. Cooper's defense would have been complete had he answered, " The legatees had no interest in the fund with which the land was bought. Their interest is limited to the *excess* of the fund beyond what was sufficient to pay the debts charged upon the fund. The fund was not sufficient to pay these debts. Hence there *was no excess*, and hence they *have no interest*. Only one thousand nine hundred and fifty-eight dollars of the fund was used. The balance of it remains uncollected and uncollectable."

44

For these reasons we say no trust existed in the land or its proceeds in favor of the legatees.

ED. CLARK, *Special Judge,* delivered the opinion of the court.

Timothy T. Cooper died in Holmes County in February, 1867, leaving a will dated May 17, 1864, by which he devised the principal portion of his estate to his brother, Joseph W. Cooper, whom he appointed his executor. The latter probated the will and qualified as executor in April, 1867. The will directs that the testator's debts and funeral expenses shall be paid as speedily as possible after his death out of any money which may come into the hands of the executor from any portion of his estate, real or personal. It then makes sundry bequests of slaves to nephews and nieces of the testator; directs that if there is a crop growing on his place at the time of his death the proceeds, after paying the expenses of the place for the year, " shall be appropriated " (to quote the language of the will), " in connection with the interest I have in notes held by Barnes & Cooper on L. B. Hemphill to the payment of my debts," and by a subsequent paragraph provides as to the notes here mentioned as follows :

" Barnes & Cooper hold notes on L. B. Hemphill for several thousand dollars. I will and direct that my portion of said notes when collected shall be appropriated to the payment of my debts. If my portion exceeds what is sufficient to pay my debts, then I will and direct that the excess be equally divided between my brother, J. W. Cooper, and my nephews, George W. Barnes and T. E. Cooper."

It is out of this provision of the will that the present controversy arises between George W. Barnes and T. E. Cooper, two of the legatees named, and the legal representative of J. W. Cooper, the executor and other legatee, who is now dead; and the contest between the parties is as to what amount the executor is chargeable with on account of the fund arising from these notes, and what debts of the testator are chargeable against it. It arises in this manner : The Hemphill notes represented the purchase-money of certain lands of Hinds County in this State, which the testator and

George M. Barnes, who was his brother-in-law, had owned as ten-
ants in common and had sold to Hemphill in the year 1860 for
about nineteen thousand dollars.   Shortly after his qualification, J.
W. Cooper, as executor of T. T. Cooper, and J. W. Robb, as ad-
ministrator of George M. Barnes, the other payee of the notes, as
joint complainants, filed a bill against Hemphill in the Chancery
Court of Hinds County, and on November 21, 1867, obtained a
decree for the sale of the land for satisfaction of the amount due
the vendors, which was ascertained to be about twenty-one thousand
six hundred dollars.   In the course of these proceedings it was
made to appear that Barnes, in his lifetime, had received a payment
upon one of the notes, which, with interest to the date of the
decree, amounted to two thousand four hundred and eight dollars
and seventy-five cents, and that nothing had been received by
Cooper, and in accordance with a prayer of the bill that the pro-
ceeds of the sale might be distributed equitably between the two
estates, it was decreed that the commissioner of sale should first pay
the equivalent of this amount out of the proceeds of sale to
Cooper's executor, and should then divide the balance equally be-
tween him and his co-complainant, Robb, as administrator of
Barnes.

On February 15, 1868, a sale was made under the decree, at
which the executor, John W. Cooper, became the purchaser of the
lands for about nineteen hundred dollars, receiving a deed in his
own name and delivering to the commissioner his receipt, as execu-
tor, for the amount of his bid, less the costs, which he paid in cash.
The sale was reported and confirmed, and on the 18th day of De-
cember, 1869, a little less than two years afterward, Cooper sold
the land to Green & Echols, of Hinds County, for seven thousand
forty-four dollars and twenty-five cents, two thousand dollars
of which he received in cash and the balance in notes, the last of
which was paid to him May 12, 1874, the whole amount of prin-
cipal and interest realized by him on this re-sale of the land being
eight thousand three hundred and fifty-one dollars and sixty-one
cents.   In July, 1864, Cooper died, having in the meantime ren-
dered four annual accounts of his executorship, the first on August

25, 1868, the second on August 23, 1869, the third · on July 25, 1870, and the fourth on July 1, 1871. In none of these accounts did he charge himself with the proceeds of the Hemphill land, either the nineteen hundred dollars bid by him at the sale under the decree or the eight thousand dollars realized on the resale to Green & Echols, though in· his first, second, and third accounts he claims credit for sums expended for costs and counsel fees in the litigation. No final account was filed by Cooper, but his annual accounts show that he claimed to have expended about thirty-six hundred dollars more than he had received as executor. Affairs were permitted to remain as left at his death until June 14, 1881, when the appellants, T. E. Cooper and George W. Barnes, as legatees entitled to share in the residuum of the Hemphill debt after payment of the proper debts of the testator, filed a petition in the Chancery Court of Holmes County, praying that the appellee, who is a widow and administratrix of the deceased executor, be cited to render his final account as such executor. She was cited and on February 5, 1882, rendered an account (which was but a, re-statement of the account filed by the executor himself), in which she-claimed a balance of three thousand five hundred and twenty-five dollars and sixty-five cents due the executor, exclusive of commissions. On July 6, 1882, the appellants filed exceptions to this account by which they sought (1) to purge it of sundry credits, claimed by the executor on account of debts paid, amounting to about three thousand nine hundred dollars; and (2) to have the executor charged with the entire amount of eight thousand three hundred and fifty-one dollars and sixty-one cents, realized by him from the sale of the Hemphill land. Their contention, as to the credits objected to, is, as to some of them, that they were not proper debts of the testator but of a copartnership, of which he and the executor and the G. M. Barnes before mentioned were the members, and therefore to be paid out of the partnership assets, and, as to others, that they were properly to be charged against the proceeds of the crop grown on the testator's plantation during the year 1867. As to the proceeds of the Hemphill land, their contention is that the executor is chargeable with that upon the

ground that it was a transaction by a fiduciary with fiduciary funds, the profits of which the beneficiaries of the trust are entitled to take to themselves.

The appellee filed what might be considered an answer to these exceptions, in which she set up in behalf of her intestate, the deceased executor, the statutes of limitation of six and ten years respectively, and in behalf of herself, as administratrix, the statute of four years in regard to suits against executors and administrators. Upon the issues thus presented and the evidence, the matter was heard by the Chancellor, who held, as matter of law, that the exceptors were not barred by limitation; that the executor must be held accountable for so much of the money realized from the re-sale of the Hemphill land as properly belonged to the estate of the testator, T. T. Cooper, and that only his individual debts could be charged against the fund. But he found, as matter of fact, that these debts amounted to more than the sum which was chargeable to the executor on the basis indicated, and he therefore dismissed the petition filed by the exceptors, praying for an account, and discharged the administratrix from making any account in behalf of her intestate. Exactly what proportion of the proceeds of the Hemphill land the Chancellor held to be chargeable to the executor does not appear, but it was stated at the bar to have been the twenty-four hundred dollars as to which Cooper's estate was given priority under the Hemphill decree and one-half of the balance; and this is reasonably inferable from the language of his decree, the principle of which appears to have been to charge the executor in respect of the proceeds of the land realized on the sale to Green & Echols, just as he would have been chargeable if this amount had been produced by the original sale under the decree.

The appellants complain of the decree upon two principal grounds: First, that the executor was not charged with the whole eight thousand three hundred and fifty-one dollars and sixty-one cents realized from the Hemphill land, which would have produced a surplus in their favor even on the basis adopted by the Chancellor; and second, that the Chancellor refused to refer the account to a commissioner after settling the principles upon which it should

be stated.    The view we take of the case makes it unnecessary to dispose of any but the first objection.

It is admitted by the appellants that, of the credits claimed for the executor, there is about two thousand eight hundred dollars, which is properly chargeable against the Hemphill fund as debts of the testator within the meaning of his will.    Unless, therefore, the executor can be properly charged, at the instance of the appellants, with more than that amount on account of this fund, it is plain that nothing can come to them under the will, and that they have not been prejudiced by the decree appealed from.    What the amount is with which he can be so charged is therefore the inquiry to be solved.

It is insisted for the appellee that the petitioners, or exceptors, are precluded by the statute of limitations from making *any* claim against the executor ;    that inasmuch as they were entitled to an action at law for the recovery of their legacy, which, as is claimed, they must have brought within six years, they must come within the same time, if they would call him to account in the court in which the trust is being administered, and ask payment there.

We cannot assent to this view.    Where a legacy is to be paid by an executor as such, and in the course of administration, it is a duty arising out of an expressed trust which the legatee is entitled to assume the trustee intends to execute.    Until the trust is ended and the executor discharged from any further accounting, the beneficiaries have the right to consider the trust an active one, and mere delay on the part of the trustee in settling with the court, and through it with the beneficiaries, and obtaining his discharge, cannot be considered such a breach of the trust as to set the statute in motion in his favor.    To so hold would be to offer a reward to executors and administrators to be dilatory instead of diligent in the performance of their duties.    Nevertheless, we are not to be understood as saying that there may not be cases in which, after an actual suspension of the trust, there has been such long acquiescence or delay on the part of the *cestui que trust* as to require the court to deny him relief upon the ground of laches.    Upon the principle that the beneficiary is entitled to rest upon the assumption that the

trustee intends to execute the trust, we are clearly of the opinion that, notwithstanding the lapse of time, the appellants are entitled to have the executor charged with the nineteen hundred dollars he bid at the Hemphill sale and for which he delivered to the commissioner his receipt as executor.

As to that sum, he is an express trustee ; it is money received by him in performance, and not in violation, of his trust, and while it is doubtless true that he did not pay the amount to the commissioner and then receive it back from him, yet no court would permit him to deny that this sum had actually come to his hands in the course of his duty. He is chargeable with it in the same right and upon the same footing as with any other assets of the estate, and cannot be heard to assert that he holds it differently.

But, inasmuch as the debts of the testator, which are admitted to be a legitimate charge upon this fund, exceed the sum of nineteen hundred dollars, and the appellants have suffered no prejudice by the decree appealed from, if this is the only amount with which the executor can be charged on this account, it becomes necessary to determine whether he can be charged with the amount realized from the sale of the land to Green & Echols, in December, 1869, in lieu of the amount bid by him at the commissioner's sale, in February, 1868.

It is a familiar principle that a trustee can make no profit for himself with the trust fund, and if he invests the fund in property, the *cestui que trust* has the election to take the property or to hold the trustee accountable for the money, and may even go to the extent of having the property sold to produce the fund, and of charging the trustee with the deficit, if any. On this principle we entertain no doubt that, if the appellants are in time, they can have the executor charged with the entire amount realized from the Hemphill land—not merely with what would have been the proportion which would have been the testator's share if he had bid that amount at the commissioner's sale, but with the whole of it. He stood in no relation to the estate of Barnes, the co-payee of the notes, which, in the absence of fraud or unfairness, precluded him from getting a bargain at the sale, and if he did get a bargain there, it was for

the benefit of his *cestuis que trust,* who, unless they are precluded by a failure to act in time, are entitled to appropriate it.

It remains, therefore, to determine whether the executor is protected by any provision of the statute of limitations from being charged with the seven or eight thousand dollars for which he resold the land, as before mentioned. We have two statutes which bear upon the case. Code of 1871, §§ 2143 and 2175; Code of 1880, §§ 2665 and 2696.

By the adoption of these provisions, much of the learning in the books touching the application of the statutes of limitation to trusts in equity has been rendered valueless in this State. There is no distinction as to the character of trusts to which the statute applies as respects their being express or implied, technical or constructive; the only limitation is that they be "not cognizable by the courts of common law," a qualification which may attach to one kind as well as to another. In the nature of things, however, the statute must act upon express technical trusts less frequently than upon any other class, since it is only through the *breach* of such a trust that it is set in motion. The statute never runs except against *a cause of action,* and a cause of action implies not only the existence of a right but such a denial of it, either actual or constructive, as puts the party entitled under a necessity to *act* if he would preserve it. An open, subsisting, and acknowledged trust is not within the operation of the statute, for, as said by Lord Redesdale, in the old case of *Hovenden* v. *Annesley,* 2 Sch. and Lef. 607 : "If a trustee is in possession, and does not execute his trust, the possession of the trustee is the possession of the *cestui que trust;* and if the only circumstance is that he does not perform his trust, his possession operates nothing as a bar, because his possession is according to his title."

But implied, resulting, and constructive trusts are subject to the operation of the statute, which begins to run from the time the wrong is committed by which the party becomes chargeable by legal implication. The very nature of such trusts excludes the idea that they are acknowledged, open, and active, and implies that the parties stand in such adverse relations to each other as to require him who

asserts the trust to become an actor if he would establish it. They either arise out of an intention which the law *imputes* to the party to do equity if seasonably called upon, or are *thrust* upon him at the instance of the injured party contrary to his known intention and will. Mr. Perry assigns to the head of *resulting* trusts cases "where a person standing in a fiduciary relation uses fiduciary funds to purchase property and takes the title in his own name" (Perry on Trusts, § 125), though it is obvious that where the party so purchasing intends at the time to hold for himself, the case partakes also of the nature of *constructive* trusts, which are said to arise out of either actual or constructive fraud. Pomeroy's Eq. Jur., §§ 148, 1030 *et seq.* When Cooper, the executor, by the use of a debt which he held in that capacity, purchased the Hemphill lands in February, 1868, he became chargeable in respect to them as a trustee for the beneficiaries of that fund, but it was upon a resulting or constructive trust, and not an express one. He did not become a trustee of the land in the proper and technical sense of the term, but only became liable to be made a trustee by decree of a court of equity. This liability arose upon the instant of the transaction, and upon the same instant the statute began to run in his favor. More than ten years elapsed before any attempt was made to charge him. The exceptions filed by appellants on the 5th of July, 1882, constitute the first effort to do so, though the result would be the same if we take the petition filed June 14, 1881, as the initiation of proceedings for that purpose. The statute appears to us to be an insurmountable difficulty. *Murdock* v. *Hughes*, 7 S. & M. 219; *Prewett* v. *Buckingham*, 28 Miss. 92; *Watts* v. *Gunn*, 53 Ib. 502; *Wilmerding* v. *Russ*, 33 Conn. 67; Wood on Limitations, §§ 200–201; Perry on Trusts, §§ 124–127, 166, 854–866.

It was suggested in argument that the purchase of the land by the executor was consistent with an intention on his part to devote it to the use of the beneficiaries, and that wrong intent cannot be assumed. We have considered this point with care, but are unable to see that such an intention could alter the case, even if clearly proved. Nothing short of an agreement taking upon him-

self the character of an express trustee would arrest the statute, *Prewett* v. *Buckingham, supra,* and such an agreement cannot rest in parol. *Gibson* v. *Foote,* 40 Miss. 788; Code of 1871, § 2896. But, if the law were different, we think we would be bound to conclude, upon the record, that Mr. Cooper bought the land for himself and always claimed and held it as his own. Though he rendered two annual accounts after the sale to Green & Echols, he did not charge himself, in either, with any part of the proceeds of this sale, though a considerable portion of it had been then paid. In these accounts, he states under oath that he had received no money on account of the estate since his last settlement, and claims credit for expenses incurred in reference to the Hemphill debts, thus indicating that the failure to charge himself was through no want of recollection. It is true that he failed, also, to charge himself with the one thousand nine hundred dollars bid at the commissioner's sale, which comports with the view that he meant to hold the land for the benefit of the estate; but we think this may be accounted for upon another view which equally repels any imputation of intentional fraud. Under the will he was required to pay the testator's debts promptly out of any moneys coming into his hands, though the Hemphill notes were designated as the fund upon which the burden was ultimately to fall. As he was himself the residuary legatee, whatever he paid before realizing on the Hemphill notes was in the nature of an advancement out of his own means. His first annual account shows disbursements amounting to about six thousand dollars; it is but a fair inference, therefore, that he considered that the one thousand nine hundred dollar bid at the Hemphill sale belonged to him, and that he need not account for it to the court.

*The decree is affirmed.*

*L. Brame,* for the appellants, filed the following suggestions of error and brief in support thereof:

1. If Cooper, before the sale, occupied a relation as trustee to the land, the nature of the trust must have been an express one arising from the grant of letters testamentary to him under the will

of T. T. Cooper. If as to this land the executor was an express trustee, we do not understand the opinion of the court to be that by any act of his own, not distinctly communicated to the beneficiaries, he could change his attitude and claim to hold adversely, nor by his own act convert himself from an express into an implied trustee. We think the fundamental error in the opinion of the court consists in the assumption that the relation of trustee arose at the instant of the purchase by Cooper, which necessarily excludes the idea that he was trustee in relation to the land before the purchase. He was the representative of the intestate, and as such was the holder of whatever rights the intestate had against Hemphill. The value of the debt consisted in the fact that its payment was secured in part by lien on the property for which the notes had been executed. The security and the debt were inseparable. If before the purchase the executor was a trustee as to the land, it is inconceivable how he could become a constructive trustee. To do this he must not only have taken on the character of constructive trustee, but also have divested himself of the character of express trustee, and this, we think, he could not do. *Staats* v. *Bergen,* 17 N. J. Eq. 562; *Rafferty* v. *Mallory,* 3 Bissell 362; *Schoonmaker* v. *Van Wyck,* 31 Barb. 458; *Jewett* v. *Miller,* 10 N. Y. 402; *James* v. *Throckmorton,* 57 Cal. 368; 4 Hawks' Law and Eq. 412.

2. Having now shown that the executor was an express trustee in reference to the land and that his purchase of it did not raise a trust by mere implication of law, as in the ordinary case of a resulting trust, we submit that the statute of limitations could not commence to run in his favor as against the beneficiary until there was an open disavowal and repudiation of the trust, which had to be brought home to the knowledge of the *cestui que trust.* *James* v. *Throckmorton,* 57 Cal. 388; *Hastie* v. *Aiken,* 67 Ala. 313; *Bacon* v. *Rives,* 106 U. S. 99; Perry on Trusts, §§ 863 and 864. The mere fact that the executor failed to report this fund, or to charge himself in his accounts, did not operate to give notice to the beneficiaries that he occupied a hostile relation in reference to the same. This fact is offset by the fact that he charged the estate with the cost of the Hemphill sale and attorney's fees, from

which it was to be inferred, of course, that he intended to give credit for what he might eventually realize. But all this amounts to nothing, because, under the authorities above cited, the uniform rule is that time only begins to run in favor of a trustee after he openly disavows the trust relation, *which must be fully and unequivocally made known to the cestui que trust.*

3. This is a case in which an accounting is being made with the court by the trustee in respect to the property or the funds of the estate in his hands, as trustee or officer of the court. The fund in question was realized by him as a trustee out of the trust property, and inasmuch as it is the case of an unsettled administration, the trustee, after citing the beneficiaries to a settlement, ought not to be allowed to say to them, or to the court, that by reason of his failure to settle earlier the *cestuis que trustent* are to be barred in respect to the assets in his hands. See *The Governor and Company* v. *McKenzie*, 8 Brown's Cases in Parliament 65 ; 4 Hawks' Law and Eq. 412. The mistake which we think the court has made is in applying a statute of limitation which has reference only to suits to be brought, so as to prevent a court of equity in which there is a pending administration from the application of the equitable maxim that no trustee shall profit by his unauthorized dealing with the trust estate. The court, in effect, says that the rule cannot here be enforced because of the lapse of time. The profits of the fund necessarily follow the fund. If the legatees are entitled to the fund itself, they are entitled, under this well-recognized maxim of equity, to its incident, the profit. The trustee derives an advantage from his own neglect to account.

4. Under the statutes of our State, which require a refunding bond to be executed before an action can be commenced for a legacy, the appellants had no standing in court, except to proceed as they have done, and could not therefore file a bill to have the purchase declared to be in trust for their use ; for we think it will hardly be argued that where the statute requires the execution of a bond as a condition to a suit, the statute of limitations begins to run as if a right of action had existed. The right to sue depends upon the ability to give the bond. We also call attention to the

fact that whether anything would be realized by the legatees must depend on the amount of the debts and the amount realized on the Hemphill notes. The legacy was therefore conditional. Whether anything passed by it, and if so how much, could not be determined until the proper settlement in the course of administration. See *Jones* v. *Irvine*, 23 Miss. 361 ; *Donaldson* v. *Raborg*, 26 Md. 312, and cases there cited.

5. Conceding, now, that we are wrong in the foregoing position in relation to the statute of limitations, and that the opinion of the court is correct in holding that as to the one thousand nine hundred dollars the executor was an express trustee, and as to the balance of the money a constructive trustee, we desire to suggest a qualification of the decision which probably was not considered by the court, and which has occurred to us since the decision in the case. The executor collected the whole of the eight thousand three hundred and fifty-one dollars before the bar of the statute of limitations had attached in reference to any part of the fund. As to a part of this fund, the court holds that he is an express trustee and cannot invoke the statute, but that as to the balance the right of action is barred. Upon the well-known maxim that equity considers that as done which ought to have been done, we submit that the court ought to hold that such portion of the fund as will now be barred by the statute of limitations ought to be considered as having been appropriated toward reimbursing the executor in respect to the debts of the testator which he had paid and in satisfaction of his part of the legacy, and that we are entitled to hold him responsible so far as the one thousand nine hundred dollars will go toward paying our proportion of the legacy.

S. S. CALHOON, *Special Judge,* delivered the opinion on suggestions of error.

We have carefully examined the suggestions of error, which have been presented with great ingenuity and force in this case, but feel compelled by the facts in the record to adhere to our previous opinion.

1. If the statute of limitations, which is a well-marked favorite

in the jurisprudence of Mississippi, applies at all in this case, it applies in the proceedings giving rise to the record. Appellants were as much actors as if they were complainants in an original bill. They sought to bring into the account a constructive trust fund after the bar had attached, which is no more allowable than a direct proceeding for its collection. Certainly the proceeding is in no more favored position than a cross-bill seeking a decree against the executor as a trustee *ex mal officio* upon the averment of a constructive trust. Regardless of form or forum, the statute may be availed of whenever and wherever the party entitled to its protection is assailed. In this connection the general rule that in proceedings to settle accounts any party in whose favor a decree may be rendered is an actor is not inapplicable. *Raymond* v. *Came,* 45 N. H. 201; *Grove* v. *Fresh,* 9 Gill & J. 280; *Scott* v. *Pinkerton,* 3 Edw. Ch. 70.

2. We cannot sanction the suggestion that the executor should be held to have paid himself his advancements to the estate and his own share of the legacy out of the fund derived from the re-sale of the land, thus leaving for appellants the one thousand nine hundred and fifty dollars bid at the first sale. To hold him liable for both the bid and the profits would be in the same breath to affirm and disaffirm the transaction by which he became the purchaser of the land. Appellants must either affirm the investment and claim the land or repudiate the investment and claim the fund invested; and as to the former, it being a constructive trust, "a trust not cognizable by the courts of common law," the statute interposes a bar, while, as to the latter, the search is fruitless because the object is absorbed in the proper liquidation of debts. Moreover, to accede to this suggestion would be to effect by indirection what is forbidden to be done directly. We cannot decree the executor a direct trustee of the fund had from the re-sale and require him to produce the proceeds for distribution, and therefore we cannot overlook the adverse holding by him and imply that he paid himself out of the fund realized from the sale of property he held and sold as his own. For ten years after his purchase he was not trustee of the land in any legal sense, but liable to be made such at the election of a

proper party by decree of a proper court. No such decree was sought or had within ten years, and we cannot pronounce one *nunc pro tunc.*

3. Neither can we approve the suggestion that the executor was an express trustee of the land which secured the debt, *because* he was such of the debt itself. Even if we proceeded on this idea, which we cannot do, it could yield no results to complainants, for the plain reason that he could thus be held as to only one-half, this being his testator's interest, and this was more than absorbed in the proper extinguishment of legitimate debts.

But the executor was not express trustee of the land. The testator had no equitable ownership of it nor power to create a trust in it. The executor undoubtedly held such relations to the land as disqualified him from holding title to it against the objections of the legatees *seasonably interposed.* But he did not hold it by any such technical trust as authorized them to regard *his* possession as *their* possession, so as to exempt them, as in cases of direct trust, from the necessity of action or election to affirm or disaffirm within the period of the statutory bar or such shorter period as circumstances might dictate.

The cases cited in support of the suggestion of error now being considered are in every instance either cases of express trusts pure and simple, or cases where the statute of limitations was not involved.

In *Staats* v. *Bergen,* 17 N. J. Eq. 562, quoted from by counsel, Bergen held a second mortgage on land on which there was a first, third, and fourth mortgage to other mortgagees, and while thus second mortgagee he executed a covenant to hold this mortgage and the bond it secured as trustee for complainant. The fourth mortgagee foreclosed for the benefit of all the mortgagees, and Bergen bought at the foreclosure sale, and the court held, at the instance of Bergen's *cestui que trust, immediately interposed,* and where there was no question of limitation, that Bergen could not avail as against his beneficiary of a purchase by him at a sale at which he was practically one of the vendors. The principles announced there and set forth in the quotations of counsel have no significance in

their bearing in the case before us when considered in reference to the facts and the whole context of the opinion, and yet this case has more apparent strength for appellants than any other they produce.

4. In the case at bar, J. W. Cooper bought the land at a public sale, not as excutor, but as an individual, took a deed to himself as the record seems to fairly import, held the land as his own, and sold and conveyed it as his own, showing such an open, notorious, flagrant adverse claim that the legatees must be held to have known it, perhaps, even if the doctrine of notice applied to constructive trusts. Being adult and free from disability, they waited more than ten years without proceeding. No case can be found, we venture to say, where, after such delay, legatees have been allowed to sue or maintain exceptions on the ground that they thought the executor was holding for them. If, in fact, it was the thing committed to his care which he held, unless upon notice of repudiation of the trust, no statute could ever apply. But the rule is not the same where, not the thing itself, but something into which that thing is converted, is involved, for, in the latter case, the election and claim must be made and asserted at least within ten years, which lapse of time it is well settled in this State gives title to the adverse holder against the world — even against the true owner.

A trustee is disabled by law to buy either the thing intrusted to him or property mortgaged to give that thing value. If he buys the thing intrusted to him, he holds it under the same trust he held it before and it remains an express or technical trust, and time does not bar the beneficiary's suit.

For the other, the beneficiary may elect to hold him as trustee by construction of law and may sue for it, but he must do it within ten years.

*Suggestions of error denied.*